Jeffery PARKER, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 48A02–9502–PC–74.

Court of Appeals of Indiana.

Oct. 30, 1995.

Rehearing Denied Feb. 19, 1996.

Transfer Denied April 30, 1996.

Susan K. Carpenter, Public Defender, Ruth Johnson, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Jeffery Parker appeals the denial of his petition for post-conviction relief, claiming that double jeopardy principles were violated when he was convicted of Criminal Confinement,[1] a class B felony, and Conspiracy to Commit Criminal Confinement,[2] a class B felony.

We affirm.

As reported in Parker's direct appeal, the facts most favorable to the judgment are as follows:

"On February 1, 1985, a riot occurred at the Indiana Reformatory at Pendleton. The incident broke out when a handful of inmates were involved in the stabbing of one of the guards. As events progressed, a group of inmates, led by John Cole, took Officer Gorsuch hostage at knifepoint and forced him to open one of the cellhouses. Once inside, Cole's group also took Officers Millstead and Ingalls and Counselor Weist hostage. Cole forced the hostages to open the switches controlling the doors to the prisoners' cells, releasing most of the prisoners in the cellhouse. Parker was one of the first released and joined Cole's group in forcing the hostages to open the many remaining switches.

Officers Millstead, Ingalls, and Counselor Weist were confined to a cell and used as bargaining chips in Cole's negotiations with prison authorities. Parker, who by this time was armed with a knife, guarded the hostages. When Parker arrived at the cell where the hostages were being held, his knife appeared to be bloodstained, and he made statements 'to the effect of we ... just stabbed officers outside and we're going to come in and get you [hostages] too.' *Record* at 1249. At one point during the crisis, a rumor flashed through the cellhouse that the authorities were going to storm the cellhouse to regain control, and

Parker responded by holding his knife to Officer Ingalls's throat. At another point, Parker slapped Officer Ingalls across the back of the head when Ingalls refused to tell authorities by radio that he was alive and unharmed."

*Parker v. State* (1991), Ind.App., 567 N.E.2d 105, 108.

Following this incident, Parker was charged with two counts of criminal confinement and one count of conspiracy to commit that offense. The charging informations provided in relevant part as follows:

"On or about the 1st day of February, 1985, in Madison County, State of Indiana, JOHN CHARLES COLE, CHRISTOPHER TROTTER, THOMAS JOHNSON, JEFFERY L. PARKER and CHARLES MURPHY did knowingly confine John Weist without his consent, by holding John Weist in 'J' cellhouse at the Indiana Reformatory located in Madison County, Indiana, and at said time the defendants, JOHN CHARLES COLE, CHRISTOPHER TROTTER, THOMAS JOHNSON, JEFFERY L. PARKER and CHARLES MURPHY were armed with deadly weapons, to-wit: sharpened metal objects which were shaped in the form of stabbing and/or cutting weapons.

. . . . .

On or about the 1st day of February, 1985, in Madison County, State of Indiana, JOHN CHARLES COLE, CHRISTOPHER TROTTER, THOMAS JOHNSON, JEFFERY L. PARKER and CHARLES MURPHY did knowingly confine Carl Ingalls without his consent, by holding Carl Ingalls in 'J' Cellhouse at the Indiana Reformatory located in Madison County, Indiana, and at said time the defendants, JOHN CHARLES COLE, CHRISTOPHER TROTTER, THOMAS JOHNSON, JEFFERY L. PARKER and CHARLES MURPHY were armed with deadly weapons, to-wit: sharpened metal objects which

---

1. Ind.Code 35–42–3–3.

2. Ind.Code 35–41–5–2.

were shaped in the form of stabbing and/or cutting weapons."

*Record* at 69–70.

Parker was convicted of these offenses and directly appealed to this court. We affirmed the judgment in all respects. On October 24, 1991, Parker filed a pro se petition for post-conviction relief which was subsequently amended by counsel on July 14, 1994. The petition alleged that Parker was subjected to double jeopardy when he was "convicted of Conspiracy to Commit Criminal Confinement in addition to two counts of Confinement where the overt act element of the conspiracy charge is the Confinement." *Record* at 44. Following a hearing on the petition, the post-conviction court entered an order denying Parker's claim for relief. In issuing the order, the trial court adopted the State's brief as its findings of fact and conclusions of law which provided in relevant part as follows:

"The Petitioner in his Amended Petition for Post–Conviction Relief cites the case of *Buie v. State* (1994) Ind. 633 N.E.2d 250 as being dispositive of the issue in this case. It is the contention of the State that the *Buie Case* is not precedence for the immediate case. In order to determine whether or not the *Buie Case* is precedent, the reviewing Judge in this case must look at the wording of the charging information as well as the wording of the Conspiracy instructions given in this case and the *Buie Case.*

In the recent case of *Derado v. State* (1993) Ind. 622 N.E.2d 181 Justice Krahulik addressed the matter at issue in this case. The facts of the *Derado Case* are:

Joseph Wayne Derado was charged in the Vanderburgh Circuit Court with five counts of Dealing in Cocaine and one (1) count of Conspiracy to Deliver Cocaine; each of the said counts being a Class A Felony. As overt acts in furtherance of the agreement in the Conspiracy count, the State alleged the facts set forth in each of the first five (5) counts of the charging information.

Justice Krahulik acknowledged that it is not enough on appeal to view the Charging Information or Indictment. He emphasized that applicable conspiracy constructions [sic] given by the Court should also be reviewed.

In considering the second step, of reviewing the the [sic] instruction by the Court, it is noted in *Derado* that the Court's Final Instruction 2 specifically sets out overt acts, as elements of the crime of conspiracy the five (5) counts (acts of delivery of Cocaine) [sic] as set out in counts one (1) through five (5) of the information as substantive charges.

A copy of the instruction given in *Derado* by the Honorable Richard Young, Judge of the Vanderburgh Circuit Court, is marked 'Exhibit 1' attached hereto and made a part of this response. Also, attached is a copy of Final Instruction # 2, setting out the elements of the crime of Conspiracy in the *Derado Case* given by Judge Young, that document is marked 'Exhibit 2' and made a part of this response.

Justice Krahulik stated in his opinion that the holding in *Derado* was not meant to affect the case law that holds that a Defendant may be convicted of both Conspiracy to Commit a Felony and of the underlying felony. The Justice continues in his opinion as follows:

'..., the holding of this case is limited to those instances where the charging document and the jury instructions rely on the same facts to prove both accomplice liability for the commission of the underlying crime as well as the overt act committed in furtherance of the Conspiracy.'

In *Buie* we have the same situation as with *Derado*, in that the Defendant, Jason R. Buie, was charged by Amended Information for Count I, Murder, Count II, Conspiracy to Commit Murder and Count III, Arson; in the Conspiracy count the overt act as set out was to [sic] extensive with the allegations made in the Murder count. A copy of the Amended Information is marked 'Exhibit 3' attached hereto and made a part of this response. Further, a copy of the Final Instructions numbered 8 and 9 regarding the elements of Conspiracy in the *Buie Case* as given by Judge Stohler, is marked 'Exhibit 4' attached

hereto and made a part of this response. Final instruction # 9 specifically narrows the overt act to the killing of the victim which were the same allegations as made in Count I of the Amended Information for Murder.

The Charging Information in this case is marked 'Exhibit 5' attached hereto and made a part of this response. A copy of the final instruction setting forth the elements of Conspiracy in this case is marked 'Exhibit 6' attached hereto and made a part of this response.

*Buie* and *Derado* can be distinguished from the instant case in that in the final instruction 'Exhibit 6' it is stated as follows:

'Third; That an act in furtherance of the agreement was performed by any party to the agreement.' In this instruction, the jury was not instructed that the overt act was limited to the Confinement of the person listed in the Confinement counts.

The State proved many overt acts other than the Confinement of the Reformatory Officer such as:

1. A conspirator's acquired 'shanks' to be used as a weapon;

2. Forcing an officer to open the door from the Guard Hall to 'J' Cell House;

3. Forcing [an] officer to open doors to the hall of the offenders housed in the 'J' Cell House including the Defendant and his accomplices.

4. Negotiating with the Department of Corrections [sic] officers;

5. As well as many other overt acts listed in the transcript of the evidence contained in the record of proceedings.

### CONCLUSION

The Petitioner was not subjected to double jeopardy in this case when convicted of and sentenced for Confinement and Conspiracy to Commit Confinement."

*Record* at 52–73.

Parker appeals and presents the following issues:

1. Was Parker subjected to double jeopardy when he was convicted of two counts of confinement and one count of conspiracy to commit criminal confinement?

2. Did Parker receive ineffective assistance of counsel?

1.

■■■ In post-conviction proceedings, a petitioner must establish grounds for relief by a preponderance of the evidence. *Powers v. State* (1991), Ind.App., 579 N.E.2d 81, *trans. denied;* Ind.Rules of Procedure, Post-Conviction Rule 1. To prevail on appeal from the denial of his petition, a petitioner must demonstrate that the evidence is without conflict and leads only to a conclusion opposite that reached by the trial court. *Weatherford v. State* (1993), Ind., 619 N.E.2d 915.

The State initially argues that Parker has waived his post-conviction remedy because it is predicated on arguments available but not raised in his direct appeal. Despite the apparent applicability of that general rule in this case, the State is precluded from now asserting the waiver defense for the first time in this appeal. Our supreme court has determined that when the State chooses to address a petitioner's allegations on the merits at the post-conviction hearing, as in this case, we will do likewise on appeal. *Ferrier v. State* (1987), Ind., 514 N.E.2d 285; *Van Evey v. State* (1986), Ind., 499 N.E.2d 245.

Parker points to *Buie v. State* (1994), 633 N.E.2d 250, and *Derado v. State* (1993), Ind., 622 N.E.2d 181 in support of his claim that he was subjected to double jeopardy when he was convicted of both confinement and conspiracy to commit confinement. Those cases determined that double jeopardy principles are violated when the State uses only the commission of the underlying felony as the basis for charging the offense of conspiracy.

In *Derado*, the defendant was convicted of dealing in cocaine and conspiracy to commit dealing. In reversing the conspiracy charge, our supreme court observed as follows:

"[T]he State chose to allege the commission of the underlying felony, dealing in cocaine, as the requisite overt act in furtherance of the conspiracy. Thus, the jury

was instructed that in order to sustain its burden of proof on the conspiracy charge, the State must prove the agreement between Derado and Barnett along with the delivery of cocaine on the five dates alleged. With respect to the dealing charge, the State had only to prove the same five deliveries. The State was required to prove no facts to obtain the conviction for dealing in cocaine in addition to those facts that it was required to prove to obtain the conviction for conspiracy. Thus, dealing in cocaine was not merely an offense that occurred in the same criminal episode as the conspiracy, it was a necessary element of the conspiracy *as charged.* The acts of delivery to substantiate the delivery charges were 'precisely coextensive' with the overt acts alleged in support of the conspiracy charge. The language of the instruction makes it evident that the factual basis underlying the conspiracy charge was the same conduct alleged by the State to establish the delivery charges. As a result, Derado was placed in double jeopardy."

*Id.* at 184 (emphasis in original). The *Derado* court also observed that the jury was instructed that in order to sustain the burden of proof on the conspiracy charge, the State must prove the agreement between the defendant and his co-conspirators along with the deliveries of cocaine which constituted the substantive crimes alleged in the other charges. As a final instruction, the trial court specifically included the five counts of cocaine delivery as elements of the alleged conspiracy between Derado and co-defendant Stephan Barnett:

"The crime of conspiracy, as charged in Count VI, is defined by statute as follows:

A person conspires to commit a felony, when with the intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. The State must allege and prove that either the defendant or the person with whom he agreed performed an overt act and in furtherance of the agreement.

To convict the defendant the State must have proved each of the following elements:

The defendant

1. On or about June 24, 1988, UP TO AND UNTIL JUNE 14, 1989, with intent to commit the crime

2. agreed with another person, or persons, to-wit: to commit the crime of DEALING IN COCAINE, A CLASS A FELONY

3. THAT THE DEFENDANT OR other persons PERFORMED AN OVERT ACT IN FURTHERANCE OF THE AGREEMENT BY

1) ON OR ABOUT APRIL 10, 1989, STEPHAN H. BARNETT AND JOHN TAYLOR DID MEET AT 101 MADISON STREET, IN THE CITY OF EVANSVILLE, COUNTY OF VANDERBURGH, STATE OF INDIANA, AT WHICH TIME STEPHAN H. BARNETT DELIVERED ONE (1) OUNCE OF COCAINE TO JOHN TAYLOR IN EXCHANGE FOR WHICH JOHN TAYLOR HAD GIVEN STEPHAN E. BARNETT ONE THOUSAND EIGHT HUNDRED DOLLARS (1,800.00).

2) ON OR ABOUT APRIL 11, 1989, STEPHAN H. BARNETT DID MEET WITH JOHN TAYLOR AT 101 MADISON STREET, IN THE CITY OF EVANSVILLE, COUNTY OF VANDERBURGH, STATE OF INDIANA, AT WHICH TIME STEPHAN H. BARNETT DID DELIVER APPROXIMATELY ONE–HALF (½) OUNCE OF COCAINE TO JOHN TAYLOR IN EXCHANGE FOR NINE HUNDRED EIGHTY–FIVE DOLLARS ($985.00) IN LAWFUL UNITED STATES CURRENCY.

3) ON OR ABOUT APRIL 28, 1989, STEPHAN H. BARNETT DID MEET WITH JOHN TAYLOR AND FRANKLIN FABIAN, FEDERAL BUREAU OF INVESTIGATION AGENT ACTING IN AN UNDERCOVER CAPACITY, AT 101 MADISON STREET, IN THE CITY OF EVANSVILLE, COUNTY OF VANDERBURGH, STATE OF INDIANA, AND STEPHAN H. BARNETT DID DELIVER APPROXIMATELY ONE (1)

OUNCE OF COCAINE TO JOHN TAYLOR IN EXCHANGE FOR ONE THOUSAND EIGHT HUNDRED EIGHTY-FIVE DOLLARS ($1,885.00) DELIVERED TO STEPHAN H. BARNETT BY JOHN TAYLOR AND AGENT FABIAN.

4) ON OR ABOUT MAY 1, 1989, STEPHAN H. BARNETT DID MEET WITH SPECIAL AGENT FRANKLIN FABIAN AND VICKIE L. WOOLSEY OF THE FEDERAL BUREAU OF INVESTIGATION, BOTH ACTING IN AN UNDERCOVER CAPACITY, AT FRANCO'S ITALIAN RESTAURANT LOCATED AT 518 MAIN STREET, IN THE CITY OF EVANSVILLE, COUNTY OF VANDERBURGH, STATE OF INDIANA, AT WHICH TIME STEPHAN H. BARNETT DID DELIVER TO FRANKLIN FABIAN APPROXIMATELY ONE (1) OUNCE OF COCAINE IN EXCHANGE FOR ONE THOUSAND EIGHT HUNDRED EIGHTY-FIVE DOLLARS ($1,885.00) IN LAWFUL UNITED STATE [sic] CURRENCY DELIVERED TO STEPHAN H. BARNETT FROM FRANKLIN FABIAN.

5) ON OR ABOUT MAY 24, 1989, STEPHAN H. BARNETT DID MEET WITH SPECIAL AGENT FRANKLIN FABIAN OF THE FEDERAL BUREAU OF INVESTIGATION ACTING IN AN UNDERCOVER CAPACITY, IN THE AREA OF DRESS REGIONAL AIRPORT, IN THE CITY OF EVANSVILLE, COUNTY OF VANDERBURGH, STATE OF INDIANA, AND LATER STEPHAN H. BARNETT DID DELIVER WHAT HE ALLEGED TO BE FIVE (5) OUNCES OF COCAINE TO SPECIAL AGENT FRANKLIN FABIAN IN EXCHANGE FOR EIGHT THOUSAND ONE HUNDRED TWENTY-FIVE DOLLARS ($8,125.00) IN LAWFUL UNITED STATES CURRENCY, WHICH SPECIAL AGENT FABIAN DID DELIVER TO STEPHAN H. BARNETT NEAR THE 500 BLOCK OF APPLE WOOD LANE, IN VANDERBURGH COUNTY, STATE OF INDIANA."

. . . . .

If the State did prove each of these elements, beyond a reasonable doubt, you should find the defendant guilty of the crime of conspiracy, a Class A felony." *Record* at 61–62.

In *Buie,* the jury was instructed in a similar fashion as to the offenses of murder and conspiracy to commit murder:

"FINAL INSTRUCTION NO. 8

To convict the defendant of Conspiracy to Commit Murder, a Class A felony, *as charged* in Count II, the State must prove beyond a reasonable doubt that the defendant:

1. agreed with Scott McCord and John Sheets to commit the crime of Murder

2. with the intent to commit the crime of Murder

3. and that John C. Sheets or the defendant performed an overt act in furtherance of that agreement *as alleged in the information.*

If you find that the State has proven each of these elements beyond a reasonable doubt, you should return a verdict finding the defendant guilty of Conspiracy to Commit Murder, a Class A felony, *as charged in Count II of the information.*

. . . . .

FINAL INSTRUCTION NO. 9

The gist of the crime of conspiracy is a criminal agreement between two or more persons, the object of which is to commit a felony.

The existence of a criminal agreement may be proven either by direct or circumstantial evidence. It is unnecessary to show that the parties actually came together and expressly agreed to commit a felony—the existence of the criminal agreement may be inferred by the jury from proof of facts and circumstances which taken together establish that two or more persons combined and confederated together for the purpose of committing a felony.

Under the Indiana Code, a criminal conspiracy is not punishable as a crime unless the State also proves, in addition to the existence of a criminal agreement between

two or more persons to commit a felony, that some overt act was performed in furtherance of the agreement. It does not matter whether the overt act is performed by the defendant or another party to the criminal agreement.

In this case, Count II of the amended information alleges that the overt act consisted of the killing of Etta Alexander by Jason R. Buie and John C. Sheets.

*In order to sustain its burden of proof on the element of the overt act, one of the essential elements of the Crime of Conspiracy to Commit Murder charged in Count II, it is sufficient for the State to prove that Etta Alexander was killed by either John Sheets or the defendant.*"

*Record* at 66–67 (emphasis supplied).

■ The instructions quoted above were bound to the charging documents which alleged that the overt acts in furtherance of the conspiracy were the very acts constituting the underlying offenses. The instructions repeatedly incorporated the language of the charging document into the elements of the conspiracy. Reversible error occurs when the State is required to prove *only* an agreement and the acts constituting the underlying offense. *Buie, supra; Derado, supra.* The *Derado* court limited this holding, however, when it observed as follows:

"Today's decision does not necessarily affect the body of case law from this Court which makes it clear that a defendant may be convicted of both conspiracy to commit a felony and commission of the underlying felony. [Citations omitted]. *Rather, the holding of this case is limited to those instances where the charging document and the jury instructions rely on the same facts to prove both accomplice liability for the commission of the underlying crime as well as the overt act committed in furtherance of the conspiracy.*"

*Derado, supra,* at 184 (emphasis supplied).

Unlike the instructions in *Derado* and *Buie,* the language of the instructions given at Parker's trial regarding the offense of conspiracy was not intrinsically bound to the provisions contained in the charging information. The jury in Parker was instructed as follows:

"To sustain the charge of conspiracy, the State must prove the following propositions:

First: That the defendant intentionally agreed with another and/or others to the commission of the felony of Criminal Confinement.

Second: That the defendant did so with the intent that the felony of Criminal Confinement be committed; and

Third: That *an act* in furtherance of the agreement was performed by any party to the agreement [sic].

If you find from *your consideration of all the evidence* that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

However, if you find from *your consideration of all the evidence* that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

*Record* at 73 (emphasis supplied).

As indicated above, the jury was instructed to consider all the evidence to determine whether Parker or another performed *an overt act* in furtherance of the conspiracy. Unlike the circumstances in *Buie* and *Derado,* the instruction here did not restrain the jury from convicting Parker of conspiracy once the State proved that Parker had committed the underlying offense of confinement. At trial, the State showed that Parker had performed acts, *independent of the actual confinement* which could have supported a conviction for conspiracy. The evidence demonstrated that Parker and the co-defendants forced an officer to open the cellhouse doors; they acquired "shanks" to be used as weapons, and they participated in negotiations with Department of Correction officers.

In light of the State's evidence demonstrating these additional acts which were independent of the underlying confinement charge, and because the jury was instructed to consider "all the evidence" presented at trial, *Record* at 73, Parker's argument that he was subjected to double jeopardy must fail.

### 2.

██ Parker next contends that both trial and appellate counsel were ineffective because they failed to challenge the validity of the convictions.

██ When this court reviews a claim of ineffective assistance of counsel, we measure counsel's performance against a "reasonably effective assistance" standard. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 308. The defendant is required to show strong and convincing evidence to overturn the presumption of competence. *Id.* We initially decide whether the acts or omissions of counsel were outside the range of professionally competent assistance. *Sparks v. State* (1986), Ind., 499 N.E.2d 738. We then determine whether the acts or omissions prejudiced the defendant. *Sulie v. State* (1988), Ind., 522 N.E.2d 380. Prejudice exists when there is "a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Smith v. State* (1987), Ind., 511 N.E.2d 1042, 1043.

As discussed in issue one, *supra,* Parker suffered no double jeopardy violation. Had either counsel raised this issue, the contention would have failed. A failure to raise the issue, therefore, did not constitute deficient performance. Counsel was not ineffective. *See, e.g., Hunter v. State* (1991), Ind., 578 N.E.2d 353 (to establish that failure to object to evidence admitted at trial resulted in inadequate representation, defendant must show that counsel's objections would have been sustained). Parker's petition for post-conviction relief was properly denied.

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

The statute which creates the crime of conspiracy in Indiana specifically requires that the state "must allege and prove . . . an overt act in furtherance of the agreement." I.C. 35–41–5–2 (Burns Code Ed.Repl.1994). The majority decision here holds that the overt act or acts alleged need not be proved.

The opinion would seem to permit a conviction when none of the alleged overt acts are proved, provided that some unalleged overt act is proved. Such view would appear to render meaningless the requirement that at least one overt act be alleged *and* proved. It seems unlikely that it was the intent of our General Assembly, in choosing the language of the statute, to permit one particular overt act to be alleged yet a totally different overt act to be proved.

There is some authority for the proposition that an overt act is not an element of the crime of conspiracy and that even if such an act must be alleged, proof of that act is not necessary. *See* 16 Am.Jur.2d, *Conspiracy* § 40 (1979). In *United States v. Harris* (1976) 7th Cir., 542 F.2d. 1283, *cert. denied* (1977) 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779, for example, the court held that overt acts are admissible whether or not charged. If an uncharged overt act is proved but the charged overt act is not proved, such cases would seem to hold that there is a variance but that the variance is not fatal unless the defendant's substantive rights were prejudiced. *Harris, supra* at 1300. Be that as it may, in light of the specific language of the Indiana statute, it does not seem appropriate to permit the state to allege one act yet obtain a conviction for an entirely different act. Support for this view may be drawn from *Parker v. State* (1991) 1st Dist.Ind.App., 567 N.E.2d 105, 109, *trans. denied,* citing *Smith v. State* (1987) Ind., 516 N.E.2d 1055, 1062, *cert. denied* (1988) 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 347. Those cases state that the essential elements of the crime include not only the agreement to commit the underlying felony, i.e., a " '[c]oncurrence of sentiment' ", but as well, " 'cooperative conduct in the criminal enterprise' ", i.e., the overt act. *Parker, supra* at 109.

My view in this regard does not prompt a dissent, however. The conspiracy charge involved did not allege merely the confinements of Weist and Ingalls which constituted the two confinement crimes for which Parker was convicted. The conspiracy charge included overt act allegations concerning confinements of correction officers Millstead and

Gorsuch, as well. Accordingly, proof of the Weist or Ingalls confinements were not essential to proof of one or more of the overt acts alleged in the conspiracy charge. It is for this reason that I concur in result with respect to Issue 1. I fully concur as to Issue 2.