**Darwin A. OWSLEY, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0108–CR–340.

Court of Appeals of Indiana.

May 30, 2002.

Rehearing Denied July 25, 2002.

Kevin C.C. Wild Indianapolis, IN, for appellant.

Steve Carter, Attorney General of Indiana, Scott A. Kreider, Deputy Attorney General Indianapolis, IN, for appellee.

## OPINION

BARNES, J.

### Case Summary

Darwin Owsley appeals his conviction for conspiracy to commit dealing in cocaine, a Class B felony. We reverse and remand.

### Issue

The sole restated issue before us is whether Owsley's conviction for conspiracy to commit dealing in cocaine is irreconcilable and impermissibly inconsistent with his acquittals for possession of cocaine and dealing in cocaine arising out of the same alleged criminal transaction.

### Facts

On the evening of October 24, 2000, an IPD narcotics unit was conducting a "buy bust" operation to find and arrest street-level drug dealers. Detective Mike Campbell turned his undercover vehicle onto 26th Street off of Capitol Avenue and parked about one-half block from a gathering of several people. A man later identified as Antwuan Stallworth approached Campbell's vehicle; Campbell asked Stallworth if he could purchase twenty dollars worth of rock cocaine. Campbell testified that an individual later identified as Owsley then walked toward Stallworth at Stallworth's beckoning, and the two had a brief conversation at the rear of Campbell's vehicle. According to Campbell's testimony, Owsley then reached into the waistband of his pants, pulled out some kind of object that Campbell could not see, made a snapping motion with his hand, and then placed something in Stallworth's hand. Stallworth then walked directly to Campbell and gave

him a rock of cocaine from that same hand in exchange for a twenty-dollar bill. Almost immediately after this transaction, other officers arrested Stallworth and Owsley. Owsley was found to be in possession of the pre-recorded twenty-dollar bill Campbell had given Stallworth, but a search of Owsley's person and the surrounding vicinity uncovered no cocaine or other contraband.

The State charged both Stallworth and Owsley with conspiracy to commit dealing in cocaine, dealing in cocaine, and possession of cocaine. With respect to the conspiracy charge, the information alleged that "Darwin Owsley performed the following overt act in furtherance of the agreement: provided cocaine to Antwuan Stallworth." Appendix p. 27. This was the only alleged and pled overt act. Stallworth entered into a plea agreement with the State, whereby he would plead guilty to the conspiracy charge and the other charges would be dismissed. At Stallworth's plea hearing, he initially denied that Owsley was involved in the October 24 drug sale, but he changed his story after consultation with his attorney.

A jury trial was conducted on April 23 and 24, 2001. In contrast to the testimony of the IPD officers, Owsley and his sister, mother, and brother offered testimony to the effect that the people on 26th Street observed by Campbell were there for Owsley's nineteenth birthday party, that Stallworth (aka "Pretty Boy") had approached Campbell's vehicle by himself, and that Stallworth then walked back toward the gathering and gave Owsley a twenty-dollar bill, telling him, "happy birthday." Additionally, Stallworth, recanting his previous explanation, testified that Owsley had nothing to do with this drug sale and that he had obtained the cocaine given to

Campbell from another person, claiming he had lied at his guilty plea hearing about Owsley's involvement in order to secure his deal. During opening and closing arguments, the State urged that the overt act in furtherance of the conspiracy was Owsley's providing the cocaine to Stallworth, as was alleged in the charging information. The jury returned with verdicts acquitting Owsley of possession of cocaine and dealing in cocaine, but finding him guilty of conspiracy to commit dealing in cocaine. This appeal now follows.

## Analysis

 Owsley urges that the verdicts in this case are fatally inconsistent. This court and our supreme court have repeatedly rejected arguments such as this. Our research reveals that no reported Indiana decision has ever reversed a conviction on this basis. Nevertheless, it is plainly the law in Indiana that we will review verdicts for consistency and take corrective action if necessary. *See Marsh v. State*, 271 Ind. 454, 460, 393 N.E.2d 757, 761 (1979). With respect to the conspiracy conviction and possession acquittal in this case, we acknowledge that the verdicts are so wholly inconsistent as to require vacation of the conspiracy conviction. To conclude otherwise would require us to hold that there could never be such a thing as inconsistent verdicts, which would clearly and impermissibly contravene precedent of our supreme court.

The law concerning alleged inconsistencies in criminal verdicts has as one of its key starting points the opinion of *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), authored by Justice Holmes:

Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. . . . That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

Id. at 393–94, 52 S.Ct. at 190–91 (internal citations omitted).

Our supreme court, however, has expressly rejected a strict application of the *Dunn* rule:

While never having reversed a case on the basis of inconsistent verdicts, this Court has consistently evinced concern over the possibility of inconsistent verdicts when faced with the issue by establishing that the verdicts are in fact not necessarily inconsistent. . . . We therefore conclude that the better, and *de facto* rule is not a narrow interpretation of *Dunn v. United States*. . . . Rather this Court has looked and will continue to look at verdicts to determine if they are inconsistent. While perfectly logical verdicts should not be demanded, extremely contradictory and irreconcilable verdicts warrant corrective action by this Court.

*Marsh v. State*, 271 Ind. 454, 460, 393 N.E.2d 757, 761 (1979) (internal citations omitted). *Marsh* is still the law in this state, although the subsequent twenty-three years have not yet produced a reversal based upon inconsistent verdicts. *See, e.g., Hodge v. State*, 688 N.E.2d 1246, 1248 (Ind.1997) (quoting *Jackson v. State*, 540 N.E.2d 1232, 1234 (Ind.1989)) ("Verdicts may be so extremely contradictory and irreconcilable as to require corrective ac-

tion."). Until our supreme court expressly directs otherwise, we are compelled to look at verdicts to determine whether they are consistent.

Although we review verdicts for consistency, there is little explicit guidance in Indiana case law as to what will constitute "extremely contradictory and irreconcilable verdicts" that may necessitate "corrective action." Some cases hold that where the trial of one defendant results in acquittal upon some charges and convictions on others, the results ordinarily will survive a claim of inconsistency where the evidence is sufficient to support the convictions. *Hodge v. State*, 688 N.E.2d 1246, 1249 (Ind.1997) (quoting *Jackson v. State*, 540 N.E.2d 1232, 1234 (Ind.1989)). As former Chief Judge Ratliff noted some years ago, this proposition seems fundamentally incompatible with the notion that two verdicts on separate counts of an information could ever be inconsistent and would indicate that convictions are simply reviewed for the sufficiency of the evidence, not for consistency with acquittals on other charges. *See Sayles v. State*, 513 N.E.2d 183, 188 (Ind.Ct.App.1987), *trans. denied.*

In practice, however, Indiana courts have routinely made an effort to ensure that opposing verdicts on different counts can be rationally reconciled. Judge Shields provided this test for analyzing whether verdicts are inconsistent:

> [D]eterminations are inconsistent only where they cannot be explained by weight and credibility assigned to the evidence. Thus, an acquittal on one count will not result in reversal of a

conviction on a similar or related count, because the former will generally have at least one element (legal or factual) not required for the latter. In such an instance, the finder of fact will be presumed to have doubted the weight or credibility of the evidence presented in support of this distinguishing element.

*Neuhausel v. State*, 530 N.E.2d 121, 123 n. 2 (Ind.Ct.App.1988). Verdicts that initially may seem inconsistent on some level are not legally inconsistent if they can be explained by the fact-finding body's exercise of its power to assign the proper weight to and either accept or reject certain pieces of evidence.[1] Thus, for example, in *Jackson* our supreme court held the defendant's conviction for one count of rape was not inconsistent with his acquittals on another count of rape that allegedly occurred at another time and place, although both counts were allegedly perpetrated against the same victim, because the jury was free to believe some portions of the victim's testimony and reject other portions. 540 N.E.2d at 1234. Also, we held in *Edwards v. State* that the defendant's conviction for exploitation of an endangered adult was not inconsistent with his acquittal for theft arising from the same set of facts, noting that the exploitation charge required only a mens rea of recklessness but theft required at least knowing or intentional conduct. 730 N.E.2d 1286, 1290–91 (Ind.Ct. App.2000).

One commentator made the following observation as to what may constitute impermissibly inconsistent verdicts in juris-

---

1. We are cognizant that opinions often state that "we will not attempt to interpret the thought process of the jury in arriving at its verdict...." *Mitchell v. State*, 726 N.E.2d 1228, 1239 (Ind.2000). In actuality, it appears that opinions in the area of inconsistent verdicts engage in much analysis of the jury's thought processes by closely examining the evidence and determining that the jury in arriving at its verdicts must have assigned a certain amount of weight to certain evidentiary details, or judged the credibility of witnesses in a certain manner, or found the elements of one offense proven and the different elements of another not proven.

dictions that do not adhere strictly to the *Dunn* rule, as is the case in Indiana:

> [S]ome cases ... will reverse where the acquittal logically negates the existence of an element necessary to the proof under the count as to which conviction was had, or where, not considering the evidence adduced in support of the count as to which the not guilty verdict was returned, the remaining evidence is insufficient or where the evidence was identical as to both the convicted and acquitted counts.

Annotation, *Inconsistency of Criminal Verdict As Between Different Counts of Indictment or Information*, 18 A.L.R.3d 259, 270–71 (1968). The Appellate Division of the New York Supreme Court has observed as follows:

> [A]bsent a rational theory for their existence, apparently inconsistent verdicts will be held repugnant when the crimes upon which the verdicts are returned are either identical as to each of their elements or so related that an acquittal on one negatives an essential element of the crimes upon which there was conviction.

*People v. Dercole*, 72 A.D.2d 318, 333, 424 N.Y.S.2d 459, 469 (1980). Applying the principles found in Indiana law and those from other jurisdictions, we conclude that under the circumstances of this case, the conviction for conspiracy to commit dealing in cocaine cannot be rationally reconciled with the acquittal for possession of cocaine.[2]

In order to convict Owsley of conspiracy to commit dealing in cocaine as a Class B felony, the State was required to allege and prove that he agreed with Stallworth to commit dealing in cocaine in any amount with the intent to commit that crime *and* that either he or Stallworth performed an overt act in furtherance of the agreement. *See* Ind.Code § 35–41–5–2. The charging information alleged and the State at trial urged the jury to conclude that the overt act was Owsley's providing Stallworth with the rock cocaine that Stallworth sold to Campbell. In order to convict Owsley of possession of cocaine as a Class D felony, the State was required to allege and prove that he knowingly or intentionally possessed cocaine in any amount. *See* Ind. Code § 35–48–4–6.

■ At trial, the evidence presented in support of Owsley's possession of cocaine was precisely identical to that presented to support his commission of an overt act in furtherance of the alleged conspiracy: Campbell's contradicted testimony that he saw Owsley remove an object that Campbell could not see from his pants, make a snapping motion with his hand, place an object into Stallworth's hand, and that Stallworth then gave Campbell the cocaine from that same hand. There was no addi-

---

**2.** Because we find these verdicts to be fatally inconsistent, we need not resolve definitively whether the dealing in cocaine acquittal is consistent with the conspiracy conviction. The wording of the charging information suggests a logical reason for these verdicts, however. It alleges that both Stallworth and Owsley "did knowingly deliver to an undercover police officer a controlled substance, that is: cocaine...." Appendix p. 27. The jury was not instructed on accomplice liability, and may have acquitted Owsley because the testimony and evidence was undisputed that it was Stallworth, not Owsley, who actually, physi-

cally delivered the cocaine to Campbell. This finding would not have precluded convicting Owsley on the conspiracy count, because the overt act alleged for the conspiracy was Owsley's providing cocaine to Stallworth, which differed from the substantive charge of dealing in cocaine (Stallworth's providing cocaine to Campbell). *See Weekley v. State*, 415 N.E.2d 152, 158 (Ind.Ct.App.1981) (permitting conviction for conspiracy in spite of acquittal on substantive charge where different or additional overt acts other than commission of the substantive offense itself are established).

tional evidence either that Owsley possessed cocaine, or that he committed the overt act of providing Stallworth with the cocaine. This was the sole overt act pled and argued by the State. If there were other overt acts the State could have relied on in support of a conspiracy charge, it did not ask the jury to consider them and such a scenario is not before us today.[3]

The jury returned a verdict indicating the State failed to prove beyond a reasonable doubt that Owsley possessed cocaine on October 24, 2000. It also returned a verdict indicating the State proved beyond a reasonable doubt that Owsley provided Stallworth with cocaine on October 24, 2000. This raises a concern that we cannot logically refute: if Owsley did not possess cocaine on that date, how could he have provided cocaine to Stallworth? We cannot explain the differing verdicts on the basis that the jury must have accepted some portions of the State's evidence and rejected other portions, because the evidence presented as to the possession charge and the overt act of the conspiracy was the same. Additionally, the acquittal on the possession charge logically negates the existence of a necessary element of the con-

spiracy charge: Owsley's alleged overt act of providing cocaine to Stallworth. It also would be irrational to state that the jury may have believed Owsley did not have the requisite knowing or intentional mens rea for possessing cocaine, but that he provided Stallworth with cocaine as part of an agreement with the intent to commit dealing in cocaine.

The State posits that the jury essentially may have chosen to ignore the law and exercise lenity by convicting Owsley only of the conspiracy charge in spite of the evidence and the law, especially because it was revealed that Stallworth, Owsley's alleged co-conspirator, had only pled guilty to conspiracy to commit dealing in cocaine and had had his dealing in cocaine and possession charges dismissed. We acknowledge the likelihood that this is precisely what happened in this case. However, if we were to entertain suggestions that the jury must have engaged in nullification or exercised lenity in arriving at logically inconsistent verdicts, there could never be such a thing as fatally inconsistent verdicts because such an argument could always be raised.[4] We rejected a similar argument in

3. Even if the State had urged the jury to consider evidence of other uncharged overt acts when deliberating the conspiracy charge, the possibility of a fatal variance between the charging information and the proof at trial would be raised. *See Parker v. State,* 660 N.E.2d 1025, 1032 (Ind.Ct.App.1995) (Sullivan, J., concurring) ("[I]n light of the specific language of the Indiana [conspiracy] statute, it does not seem appropriate to permit the state to allege one [overt] act yet obtain a conviction for an entirely different act."). Additionally, Owsley's mere association with Stallworth and Stallworth's commission of the substantive offense of dealing in cocaine could not support Owsley's conspiracy conviction. *See Porter v. State,* 715 N.E.2d 868, 871 (Ind.1999).

4. In the federal system and the majority of other jurisdictions, which strictly adhere to

the *Dunn* rule, it is seen as beneficial that verdicts are not overturned for inconsistency precisely because that rule allows for leniency:

> The settled rule in the federal system is that it is the prerogative of the jury simultaneously to return inconsistent verdicts.... The present rule permits the jury to enter into compromises and to act out of leniency; if it were to be changed, the jury would have to be instructed that any inconsistencies in their verdicts would vitiate any guilty verdicts they might return, and the net result might be that fewer defendants would be acquitted on individual counts. And such an exception would be unwise.

*United States v. Martorano,* 557 F.2d 1, 9, (1st Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). Whatever the wisdom of this observation, it conflicts with Indiana law requiring that we review verdicts

*Segovia v. State,* 666 N.E.2d 105 (Ind.Ct. App.1996). There, we held the State was collaterally estopped from trying the defendant for conspiracy to commit arson because of his prior acquittal for felony murder, where commission of the arson was both the alleged underlying felony and the alleged overt act of the conspiracy. The State argued that because the jury is the judge of both the law and the facts under Article I, § 19 of the Indiana Constitution, it could have chosen to ignore the law in the first acquittal. We concluded that accepting the State's argument would mean collateral estoppel could never be applied "because every criminal acquittal includes the risk of a jury deciding simply not to follow the law." *Id.* at 108. The same reasoning applies to inconsistent verdicts.[5]

Having decided that Owsley's conspiracy conviction is fatally inconsistent with his possession of cocaine acquittal, we must decide what "corrective action" to take because no Indiana case has ever reached the point of having to take such action. Some jurisdictions that analyze verdicts for inconsistency direct that the conviction be vacated and a judgment of acquittal be entered. *See People v. Hoffman,* 655 P.2d 393, 396 (Colo.1982). Others hold that a new trial should be conducted in the event a jury returns inconsistent verdicts. *See DeSacia v. State,* 469 P.2d 369, 381 (Alaska 1970). This was also the view of Justice Butler in his dissent in the *Dunn* case. *See Dunn,* 284 U.S. at 407, 52 S.Ct. at 195 (Butler, J., dissenting).

▇ We conclude that the more appropriate course of action is to hold that Ows-

ley is entitled to a new trial in this matter with respect to his conspiracy conviction. Because we cannot delve into the thought processes of the jury, we cannot know whether it believed there was sufficient evidence to convict Owsley of both possession and conspiracy to commit dealing in cocaine and acted out of leniency, or whether it believed there was insufficient evidence. Owsley carried out the alleged overt act of providing cocaine to Stallworth but nonetheless convicted him improperly. Our vacation of Owsley's conspiracy conviction is on procedural grounds and should not be viewed as a holding that there was necessarily insufficient evidence to convict Owsley of that crime, in which event the prohibition against double jeopardy would bar Owsley's retrial on the conspiracy charge. *See Cuto v. State,* 709 N.E.2d 356, 362 (Ind.Ct.App.1999).

▇ We also observe that this case differs from *Segovia,* where the first jury's acquittal did not irreconcilably conflict with another verdict returned at the same trial and it was clear the State was collaterally estopped in a second trial from relitigating whether the defendant had committed arson. The first step in collateral estoppel analysis requires that we determine what the first judgment necessarily decided. *Segovia,* 666 N.E.2d at 107 (quoting *Webb v. State,* 453 N.E.2d 180, 183 (Ind.1983)). " '[O]nce a defendant has satisfied one jury that he is not guilty of a crime, constitutionally-rooted considerations of fairness preclude the Government from injecting any issues necessarily decided in his favor into a second trial for

for inconsistencies. In any event, such an observation presumes that a jury returning inconsistent verdicts in fact found sufficient evidence to support a guilty verdict that conflicts with a not guilty verdict and the jury necessarily acquitted out of leniency, when the very opposite could be true. It is also possible that a jury returning inconsistent ver-

dicts did *not* find sufficient evidence to support the guilty verdict but chose to convict the defendant nonetheless based upon improper considerations.

5. Collateral estoppel, however, does not bar Owsley's retrial for conspiracy, as we explain.

188

another offense.' " *Griffin v. State*, 717 N.E.2d 73, 84 (Ind.1999) (quoting *Little v. State*, 501 N.E.2d 412, 415 (Ind.1986) (in turn quoting *United States v. Mespoulede*, 597 F.2d 329, 330 (2nd. Cir.1979))), *cert. denied*, 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000). Here, because of the jury's irreconcilable verdicts, it is impossible to determine definitively what was "necessarily decided" in the first trial, and the State is not collaterally estopped from relitigating whether Owsley committed the overt act of providing Stallworth with cocaine in furtherance of the alleged conspiracy. A jury's acquittal absolutely bars retrial on that particular charge, however, even if the verdict was reached erroneously. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Griffin*, 717 N.E.2d at 77. Owsley, therefore, may only be retried on the conspiracy charge, but not on the possession or dealing charges. *See DeSacia*, 469 P.2d at 380–81.

### Conclusion

If the rule that we are to review verdicts for inconsistencies is to have any meaning, we are compelled to reverse Owsley's conspiracy conviction because of its irreconcilable inconsistency with his acquittal for possession of cocaine, where the evidence presented in support of that charge was identical to the evidence in support of the overt act of the conspiracy. We direct that Owsley's conviction for conspiracy to commit dealing in cocaine be vacated and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and VAIDIK, J., concur.