Shewanda B. **BEATTIE**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0805–CR–247.

Court of Appeals of Indiana.

April 9, 2009.

Transfer Granted July 2, 2009.

---

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Shewanda Beattie was charged with dealing in cocaine, a Class B felony;[1] possession of cocaine in a family housing complex, a Class B felony;[2] and possession of marijuana, a Class A misdemeanor.[3] The verdict forms provided to the jury included simple possession of cocaine as a lesser-included offense. The jury found Beattie not guilty of dealing in cocaine and possession of cocaine, but found her guilty of possessing cocaine in a family housing complex and possession of marijuana. Because the jury's verdicts are inconsistent, we reverse her conviction of possession of cocaine in a family housing complex. However, the evidence seized from her apartment was properly admitted, and there was sufficient evidence to support a conviction of possession of cocaine in a family housing complex. Therefore, we remand for a new trial on that charge.

## FACTS AND PROCEDURAL HISTORY

Evansville Police Officer Todd Seibert sometimes worked off-duty for the Evansville Housing Authority. Officer Seibert acted as "security" and investigated complaints. (Tr. at 123.) On May 3, 2007, he was assigned to Caldwell Homes, a public housing complex bordered by Cross Street

1. Ind.Code § 35–48–4–1(a)(2).

2. Ind.Code § 35–48–4–6.

3. Ind.Code § 35–48–4–11(1).

and Sweetser Avenue. On that day, Officer Seibert investigated a complaint of narcotics dealing in 669 Sweetser. Officer Seibert obtained Beattie's name from the lease.

Officer Seibert saw Beattie approaching 669 Sweetser, and he asked her if they could go inside and discuss the complaint he had received. Beattie agreed. When Beattie opened the door, Officer Seibert could smell burnt marijuana. Officer Seibert said he had received a tip that narcotics were being dealt from the apartment. Officer Seibert read Beattie her *Miranda* rights and asked for consent to search her apartment. Beattie signed a consent to search form, on which Officer Seibert had erroneously listed the address as 669 Cross.

With the help of other officers, Officer Seibert began searching Beattie's apartment. In a nightstand drawer, they found a bag of marijuana. Under a mattress, they found a coin purse that contained three individually-packaged cocaine rocks.

Once drugs were located, Officer Seibert called a narcotics investigator, Detective Brock Hensley. Detective Hensley advised Beattie of her *Miranda* rights and asked if she was willing to make a statement. Beattie agreed to make a statement, and she told Detective Hensley her supplier was a man named Dee Dee.

## DISCUSSION AND DECISION

Beattie raises two issues: (1) whether the trial court erred by admitting the evidence obtained as a result of the search; and (2) whether the jury's verdicts are inconsistent.

### 1. *Admission of Evidence*

■ In reviewing the validity of a search, we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Navarro v. State*, 855 N.E.2d 671, 675 (Ind.Ct.App.2006). We do not reweigh the evidence or judge the credibility of witnesses. *Primus v. State*, 813 N.E.2d 370, 373 (Ind.Ct.App.2004).

■ "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Id.* at 374. Consent to search is a well-recognized exception to the warrant requirement. *Id.* When an individual gives the State permission to search her property, the governmental intrusion is presumably reasonable. *Id.*

■■ "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, in other words, 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?'" *Pinkney v. State*, 742 N.E.2d 956, 960 (Ind.Ct.App. 2001) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)), *trans. denied* 753 N.E.2d 10 (Ind. 2001). Beattie argues a reasonable person would not construe the scope of her consent to include 669 Sweetser because the form she signed stated she was consenting to a search of 669 Cross.

Officer Siebert asked Beattie if he could talk to her in her apartment. After they entered her apartment, Officer Siebert explained he had received a complaint about narcotics dealing in her apartment. He testified he asked Beattie "for consent to search her apartment," (Tr. at 11), "the apartment we were in." (*Id.* at 152.) She responded by signing the consent to search form. She said nothing to the police that would indicate she was denying consent to search 669 Sweetser, and there

is no evidence she objected or interfered when they began searching 669 Sweetser.

Beattie asks us to conclude that the only reasonable understanding of her exchange with the police is that she consented to a search of some other apartment; however, that is a request to reweigh the evidence. It is clear from the context of their conversation that Officer Siebert was interested in searching Beattie's apartment, 669 Sweetser. Beattie did not deny the police consent to search her apartment, but instead signed a consent to search form that contained a scrivener's error. A reasonable person could conclude Beattie had given consent to search her apartment, and the search does not run afoul of the Fourth Amendment.

■ Beattie also argues the search violated Article 1, Section 11 of the Indiana Constitution. Under that provision, the burden is on the State to show the intrusion was reasonable under the totality of the circumstances. *Primus*, 813 N.E.2d at 373. Beattie again emphasizes the mistake in the consent to search form, but the facts do not compel a different outcome under Article 1, Section 11. Officer Siebert was clearly interested in searching Beattie's apartment—not some other apartment unrelated to the complaint he was investigating—and Beattie's actions were consistent with giving consent. The scrivener's error does not make the search unreasonable.

### 2. *Inconsistent Verdicts*

The State devotes several pages of its brief to an argument that inconsistent verdicts should not be reviewed at all. The State argues in part that Indiana case law supporting review of inconsistent verdicts is based on federal case law that has since been undermined. In *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court held consistent verdicts were not necessary. Over time, the federal circuit courts adopted exceptions to that rule. The United States Supreme Court later rejected those exceptions, holding consistency of verdicts was not reviewable on any ground. *United States v. Powell*, 469 U.S. 57, 69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

■ Some Indiana decisions have relied on federal case law; however, we conclude Indiana has an independent tradition of reviewing inconsistent verdicts. In *Marsh v. State*, 271 Ind. 454, 393 N.E.2d 757 (1979), our Indiana Supreme Court reviewed the different interpretations of *Dunn* by the federal circuit courts. The Court then noted it "has consistently evinced concern over the possibility of inconsistent verdicts," and concluded "the better ... rule is not a narrow interpretation of *Dunn* .... Rather this Court has looked and will continue to look at verdicts to determine if they are inconsistent." *Id.* at 761. As *Marsh* did not rely solely on federal case law, but looked to the Indiana Supreme Court's own history of reviewing verdicts, we are unconvinced that *Powell* mandates a change in policy.

We acknowledge our Indiana Supreme Court has not consistently followed *Marsh*, but has sometimes followed earlier decisions that were never explicitly overruled. *See Williams v. State*, 501 N.E.2d 1146, 1147–48 (Ind.Ct.App.1986) (providing a sampling of cases). The most recent decision in which our Indiana Supreme Court declined to review verdicts for consistency is *Dorsey v. State*, 490 N.E.2d 260, 269 (Ind.1986). Since 1986, our Indiana Supreme Court has reviewed the consistency of verdicts on several occasions. *See, e.g., Mitchell v. State*, 726 N.E.2d 1228, 1239–41 (Ind.2000) (in a unanimous opinion, the current members of our Supreme Court reviewed the consistency of jury verdicts).

We will continue to follow this trend of over twenty years until directed otherwise.

■■■ Beattie argues her conviction of possession of cocaine in a family housing complex should be reversed because the jury acquitted her of the lesser-included offense of possession of cocaine. We agree.

■■■■ "When this Court reviews a claim of inconsistent jury verdicts, we will take corrective action only when the verdicts are 'extremely contradictory and irreconcilable.'" *Mitchell v. State*, 726 N.E.2d 1228, 1239 (Ind.2000) (quoting *Jones v. State*, 689 N.E.2d 722, 724 (Ind. 1997)), *overruled on other grounds by Robinson v. State*, 805 N.E.2d 783 (Ind.2004). Perfect logical consistency is not required. *Id.* Jury verdicts are

> inconsistent only where they cannot be explained by weight and credibility assigned to the evidence. Thus, an acquittal on one count normally will not result in reversal of a conviction on a similar or related count, because the former will generally have at least one element (legal or factual) not required for the latter. In such an instance, the finder of fact will be presumed to have doubted the weight or credibility of the evidence presented in support of this distinguishing element.

*Neuhausel v. State*, 530 N.E.2d 121, 123 n. 2 (Ind.Ct.App.1988).

Beattie's case is similar to *Owsley v. State*, 769 N.E.2d 181 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 700 (Ind.2002). An undercover detective asked Stallworth for twenty dollars worth of cocaine. Stallworth approached Owsley, who pulled an object out of the waistband of his pants and placed it in Stallworth's hand. Stallworth then returned to the detective and gave him a rock of cocaine in exchange for twenty dollars. Owsley was charged with possession of cocaine, dealing in cocaine, and conspiracy to commit dealing in cocaine. The overt act alleged to support the conspiracy was Owsley's provision of cocaine to Stallworth. The jury found Owsley guilty of conspiracy to commit dealing in cocaine, but not guilty of dealing in cocaine and possession of cocaine.

We held the verdicts were inconsistent:

> At trial, the evidence presented in support of Owsley's possession of cocaine was precisely identical to that presented to support his commission of an overt act in furtherance of the alleged conspiracy: [the detective's] testimony that he saw Owsley remove an object ... from his pants, make a snapping motion with his hand, place an object into Stallworth's hand, and that Stallworth then gave [the detective] the cocaine from that same hand. There was no additional evidence either that Owsley possessed cocaine, or that he committed the overt act of providing Stallworth with the cocaine. This was the sole overt act pled and argued by the State. If there were other overt acts the State could have relied on in support of a conspiracy charge, it did not ask the jury to consider them and such a scenario is not before us today.

> The jury returned a verdict indicating the State failed to prove beyond a reasonable doubt that Owsley possessed cocaine on October 24, 2000. It also returned a verdict indicating the State proved beyond a reasonable doubt that Owsley provided Stallworth with cocaine on October 24, 2000. This raises a concern that we cannot logically refute: if Owsley did not possess cocaine on that date, how could he have provided cocaine to Stallworth? We cannot explain the differing verdicts on the basis that the jury must have accepted some portions of the State's evidence and reject-

ed other portions, because the evidence presented as to the possession charge and the overt act of the conspiracy was the same. Additionally, the acquittal on the possession charge logically negates the existence of a necessary element of the conspiracy charge: Owsley's alleged overt act of providing cocaine to Stallworth.

*Id.* at 185–86 (footnote omitted).

In Beattie's case, the only evidence of possession of cocaine was the cocaine allegedly found under the mattress in her apartment; there was no evidence she possessed cocaine at any other time or at any other place. As in *Owsley,* we cannot explain the jury's verdicts on the basis that it must have accepted some portions of the State's evidence and rejected other portions, because the evidence supporting possession of cocaine in a family housing complex was the same evidence that supported simple possession. Acquittal on possession of cocaine logically negates a necessary element of possession of cocaine in a family housing complex.

The State argues the inconsistency of the jury's verdicts is harmless because the evidence of her guilt was overwhelming. However, the same "overwhelming" evidence supported possession of cocaine, and the jury acquitted Beattie of that offense. Therefore, it is impossible for us to determine which verdict reflects the jury's determination of the facts. Were we to find the jury must have intended to find Beattie guilty of possession of cocaine in a family housing complex because the evidence was overwhelming, we could explain the acquittal only on the basis that the jury ignored the law or exercised lenity. In *Owsley,* we held that would not defeat a claim of inconsistent verdicts:

> The State posits that the jury essentially may have chosen to ignore the law and exercise lenity by convicting Owsley

only of the conspiracy charge in spite of the evidence and the law, especially because it was revealed that Stallworth, Owsley's alleged co-conspirator, had only pled guilty to conspiracy to commit dealing in cocaine and had had his dealing in cocaine and possession charges dismissed. We acknowledge the likelihood that this is precisely what happened in this case. However, if we were to entertain suggestions that the jury must have engaged in nullification or exercised lenity in arriving at logically inconsistent verdicts, there could never be such a thing as fatally inconsistent verdicts because such an argument could always be raised.

*Id.* at 186. Accordingly, we reverse Beattie's conviction of possession of cocaine in a family housing complex.

Beattie argues the double jeopardy provisions of the United States and Indiana Constitutions prohibit her retrial on the conviction we have reversed. Because the jury acquitted her of possession of cocaine, she argues, there was necessarily insufficient evidence of possession of cocaine in a family housing complex; therefore, she should be acquitted of that charge.

In *Owsley,* we remanded for a new trial on the conspiracy charge:

> Because we cannot delve into the thought processes of the jury, we cannot know whether it believed there was sufficient evidence to convict Owsley of both possession and conspiracy to commit dealing in cocaine and acted out of leniency, or whether it believed there was insufficient evidence Owsley carried out the alleged overt act of providing cocaine to Stallworth but nonetheless convicted him improperly. Our vacation of Owsley's conspiracy conviction is on procedural grounds and should not be viewed as a holding that there was necessarily insufficient evidence to convict

Owsley of that crime, in which event the prohibition against double jeopardy would bar Owsley's retrial on the conspiracy charge.

*Id.* at 187.

 We agree with the reasoning in *Owsley.* We are not reversing Beattie's conviction due to insufficient evidence, but because the inconsistency in the jury's verdicts leaves us unable to determine what evidence the jury believed. Therefore, we conclude the appropriate remedy is to remand for a new trial on possession of cocaine in a family housing complex.

Reversed and remanded.

FRIEDLANDER, J., concurs.

BRADFORD, J., concurs with separate opinion.

BRADFORD, Judge, concurring with separate opinion.

I fully concur with the majority's analysis in Part 1 and most of its analysis in Part 2. However, I do not embrace the concept of reviewing inconsistent verdicts, where, as here and in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the defendant has been acquitted by at least one of the allegedly inconsistent verdicts. I am of this view especially given that in Indiana jurors have the right to determine the law and the facts. A jury's verdict to acquit may be based upon any number of reasons, including lack of proof, leniency and nullification. I am mindful that unless the Indiana Supreme Court chooses to eliminate the review of inconsistent verdicts, we are bound to make such a review. I would urge the Supreme Court to adopt the position announced in *Powell,* 469 U.S. at 68–69, 105 S.Ct. 471, wherein the United States Supreme Court abandoned the review of inconsistent verdicts altogether in cases where the allegedly inconsistent verdicts included at least one acquittal. In all other respects, I concur with my colleagues.