John D. MAY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 28A05–0401–CR–47.

Court of Appeals of Indiana.

June 23, 2004.

Katharine C. Liell, Stacy R. Uliana, Liell & McNeil Attorneys PC, Bloomington, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

John D. May appeals his conviction for burglary. Because the jury could have concluded that May broke and entered a building with intent to commit theft but did not commit theft, we conclude that May's conviction for burglary and acquittal on theft are not inconsistent. Also, we conclude that the evidence is sufficient to support May's conviction for burglary. However, because the trial court failed to follow statutory requirements when imposing a $750 public defender services fee, we remand this case with instructions to vacate the fee.

### Facts and Procedural History

On September 14, 2002, May and Michael Payne ran into each other at the county jail while visiting incarcerated friends. Payne offered to give May a ride home, and May accepted. May then directed Payne to drive behind a house owned by William Enicks. May told Payne that it was his grandmother's house, that she was moving, and that they could take anything they wanted from the house. At the time, Enicks and his wife were living with their son in Tennessee, and they had removed some items from their house. When May tried to open the back door to the house, it was locked. May told Payne, who was sitting in the car parked close to the house, that the door should have been unlocked. May then smashed a window on the back door, reached inside to unlock the door, and opened it. May, who had a beer can in his hand, entered the house.

After waiting in the car for a few minutes, Payne went inside the house to see what May was doing. Payne observed May, whose arm was cut and bleeding from breaking the window, pick up various articles of clothing from around the house and put them into a box by the back door. When Payne saw Enicks' neighbor, Don Eccles, outside the house, he returned to the car. Shortly thereafter, Payne observed May leaving the house carrying a "box full of clothes and like ties and hangers and stuff." Tr. p. 126. After May entered the car, Eccles approached the pair and asked who they were. May told Eccles that he was the homeowner's

grandson. When Eccles asked May who his mother was, May responded that he was adopted. Because Eccles was unsatisfied with this answer, May instructed Payne to drive away. Eccles wrote down the license plate number and then contacted Enicks's daughter, Melissa Reintjes, who was taking care of the house while her parents were living in Tennessee.

When Reintjes arrived at the house, she observed a broken door and glass lying on the ground. She then called the police. When police officers arrived, Reintjes entered the house. She observed a tote with clothing inside by the back door, which was not there the last time she had checked on the house. Reintjes also observed that the house was in disarray, that the closets had been rummaged through, and that clothes were lying on the floor. Although Reintjes was unable to identify anything specifically, she knew that some articles of clothing were missing. Police officers found a beer can with May's fingerprint inside the house as well as unidentified drops of blood.

Based on the license plate number that Eccles wrote down, police officers went to Payne's house later that night and questioned him. Payne subsequently pled guilty to burglary and was sentenced to four years with three years suspended. In exchange, Payne agreed to testify against May at trial. The State charged May with Burglary as a Class C felony[1] and Theft as a Class D felony.[2] At trial, May testified in his own defense that he had never been to Enicks' house and that he was out of the county on September 14. Following trial, the jury found May guilty of burglary and not guilty of theft. May moved for a mistrial on grounds of inconsistent verdicts, which the trial court denied. The trial court subsequently sentenced May to

eight years with one year suspended. The trial court also ordered May to pay $750 into the supplemental public defender services fund. May now appeals.

## Discussion and Decision

May raises three issues on appeal. First, May contends that the jury verdicts are fatally inconsistent. Second, he contends that the evidence is insufficient to support his conviction for burglary. Last, May contends that the trial court erred by ordering him to pay $750 into the supplemental public defender services fund. We address each issue in turn.

### I. Inconsistent Verdicts

First, May contends that his conviction for burglary and acquittal on theft are fatally inconsistent and asks us to grant him a new trial on burglary. We review verdicts for consistency and will take corrective action if necessary. *Owsley v. State,* 769 N.E.2d 181, 183 (Ind.Ct. App.2002), *reh'g denied, trans. denied.* While perfectly logical verdicts are not required, "extremely contradictory and irreconcilable verdicts warrant corrective action by this Court." *Id.* (quotation omitted). Verdicts that initially may seem inconsistent on some level are not legally inconsistent if they can be explained by the fact-finder's exercise of its power to assign the proper weight to and either accept or reject certain pieces of evidence. *Id.* For example, in *Jackson v. State,* the Indiana Supreme Court held that the defendant's conviction for one count of rape was not inconsistent with his acquittal on a second count of rape that allegedly occurred at another time and place, although both counts were allegedly perpetrated against the same victim, because the jury was free to believe some portions of the victim's testimony but reject other por-

---

1. Ind.Code § 35–43–2–1.

2. Ind.Code § 35–43–4–2(a).

tions. 540 N.E.2d 1232, 1234 (Ind.1989). Additionally, verdicts are inconsistent

> only where they cannot be explained by weight and credibility assigned to the evidence. Thus, an acquittal on one count will not result in reversal of a conviction on a similar or related count, because the former will generally have at least one element (legal or factual) not required for the latter. In such an instance, the finder of fact will be presumed to have doubted the weight or credibility of the evidence presented in support of this distinguishing element.

*Owsley*, 769 N.E.2d at 183 (quotation omitted).

■ To convict May of burglary as charged in this case, the State was required to prove that he broke and entered Enicks' house with intent to commit theft. *See* Ind.Code § 35–43–2–1. To convict May of theft as charged in this case, the State was required to prove that he knowingly or intentionally exerted unauthorized control over Enicks' clothing with intent to deprive Enicks of any part of the clothing's value or use. *See* Ind.Code § 35–43–4–2(a). That is, burglary required May to intend to commit theft while theft required an actual deprivation of property.

Here, the jury could have found that May broke and entered Enicks' house with intent to commit theft but did not commit theft. Although Payne testified at trial that he observed May carrying a box of clothes, ties, and hangers out of the house, the jury was free to disbelieve this portion of Payne's testimony. *See Jackson*, 540 N.E.2d at 1234. This is especially plausible in light of the fact that Eccles approached the house while May and Payne were still inside, forcing the pair to quickly return to the car and possibly abort their plan to remove the items from the house. Additionally, Eccles testified at trial that as he approached the house, it looked like

"they might have been carrying something on [a] clothes hanger but ... at the distance I was at that time I ... don't know, but they had something ... hanging but I had no idea what it would have been." Tr. p. 146–47. Although Reintjes testified at trial that she knew articles of clothing were missing, she could not identify them, and the missing articles of clothing were never recovered. Reintjes also testified that she found a tote containing clothing by the back door. Based on this evidence, the jury could have concluded that May broke and entered Enicks' house with intent to commit theft but did not complete the theft. Because burglary only requires intent to commit theft and not an actual theft, and because it was within the jury's province to find that May did not complete the theft, we conclude that the verdicts are not fatally inconsistent.

## II. Sufficiency of the Evidence

Next, May contends that the evidence is insufficient to support his conviction for burglary. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Allen v. State*, 787 N.E.2d 473, 482 (Ind.Ct.App.2003), *trans. denied.* We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

■ As outlined above, in order to convict May of burglary as charged in this case, the State was required to prove that he broke and entered Enicks' house with intent to commit theft. *See* I.C. § 35–43–2–1. Theft, in turn, is the knowing or intentional exertion of unauthorized control over property of another person with

intent to deprive that person of any part of its value or use. I.C. § 35–43–4–2(a). Payne testified at trial that May directed him to drive behind Enicks' house and told him that it was his grandmother's house and that they could take anything they wanted from the house. May then smashed a window on the back door, reached inside to unlock the door, and opened it. Payne also testified that when he entered the house, he observed May pick up various articles of clothing from around the house and put them into a box by the back door. Although May denied at trial that he had ever been inside Enicks' house, a beer can with May's fingerprint was found inside the house. Additionally, Eccles identified May at trial as the person he spoke with on September 14 outside Enicks' house and who lied about being the homeowner's grandson. Further, Reintjes testified at trial that there was a tote with clothing inside by the back door, which was not there the last time she had checked on the house. She also testified that the house was in disarray, that the closets had been rummaged through, and that clothes were lying on the floor. *See Lewis v. State,* 700 N.E.2d 485, 487–88 (Ind.Ct.App.1998) (finding sufficient evidence of intent to commit theft to support burglary conviction where the defendant moved items from various parts of the building and placed them outside the building). The evidence is sufficient to prove that May broke and entered Enicks's house with intent to commit theft.

## III. Supplemental Public Defender Services Fund

■ Last, May contends that the trial court erred by ordering him to pay $750 into the supplemental public defender services fund. There are three statutes that address when a defendant must reimburse the county for counsel provided to him at public expense—all three of which require the funds to be deposited in the county's supplemental public defender services fund. A trial court can order reimbursement for costs of representation under any of the three statutes or combination thereof. The first statute, Indiana Code § 35–33–7–6, provides in relevant part:

> If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:
>
> (1) For a felony action, a fee of one hundred dollars ($100).

Ind.Code § 35–33–7–6(c). Although this statute contemplates that trial courts will order the defendant to pay the $100 fee at the initial hearing, *see* I.C. § 35–33–7–6(a), the statute does not prohibit trial courts from imposing it at other stages of the proceedings.

The remaining two statutes, Indiana Code §§ 33–9–11.5–6 and 33–19–2–3, allow trial courts to impose representation costs against a defendant in excess of $100. Specifically, Indiana Code § 33–9–11.5–6(a) provides that if "the court makes a finding of ability to pay the costs of representation," the defendant shall pay "[r]easonable attorney's fees if an attorney has been appointed for the person by the court." These fees, which cannot exceed the cost of defense services rendered to the person, can be imposed "at any stage of a prosecution." Ind.Code § 33–9–11.5–6(a), (d).

Finally, Indiana Code § 33–19–2–3(a) provides that "[w]hen the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent." If, after such a hearing, "the court determines that a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the

person." Ind.Code § 33–19–2–3(c). This fee must be assessed when the court imposes costs. I.C. § 33–19–2–3(a).

At the sentencing hearing in this case, the trial court ordered May "to reimburse the Greene County Supplemental Public Defender fund in the amount of $750.00." Appellant's App. p. 140. The trial court did not specify under which statute, or combination of statutes, it imposed the $750 fee. Regardless, the trial court neither made a finding of May's ability to pay the costs of representation as required by Indiana Code §§ 35–33–7–6 [3] and 33–9–11.5–6 nor conducted a hearing to determine whether May was indigent and determined that he was able to pay part of the costs of representation as required by Indiana Code § 33–19–2–3. Because the trial court failed to follow the steps that must be taken before imposing a public defender services fee, we remand this case with instructions for the trial court to reverse its assessment of the $750 public defender services fee. On remand, if the trial court wishes to impose a public defender services fee, the court must follow the statutory requirements.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and MAY, J., concur.

---

**3.** In *Turner v. State,* 755 N.E.2d 194, 200–01 (Ind.Ct.App.2001), *trans. denied,* and *Mathis v. State,* 776 N.E.2d 1283, 1288 (Ind.Ct.App. 2002), *trans. denied,* this Court held that the defendant had to pay a $100 public defender services fee pursuant to Indiana Code § 35–33–7–6(c) even though the trial court did not find that the defendant was able to pay part of the cost of representation. In reaching this holding, however, the *Turner* and *Mathis* courts did not specifically address the statutory requirement that the trial court must find that the defendant is able to pay part of the cost of representation before imposing such a fee. Accordingly, to the extent that *Turner* and *Mathis* hold that a trial court does not have to make a finding that the defendant is able to pay part of the cost of representation before imposing a public defender services fee pursuant to Indiana Code § 35–33–7–6(c), we decline to follow them. Although this author concurred in *Mathis,* it is clear that the trial court must find that the defendant is able to pay part of the cost of representation before imposing a public defender services fee pursuant to Indiana Code § 35–33–7–6(c).