**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSHUA D. GAUNT, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 90A02-1210-CR-847 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1204-FC-10

**April 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Joshua D. Gaunt pleaded guilty pursuant to a plea agreement to aiding, inducing, or causing burglary, as a class C felony. The trial court sentenced Gaunt to six years, with two years suspended to probation. Gaunt presents the following restated issues for review:

1.      Is Gaunt's sentence inappropriate in light of the nature of the offense and his character?

2.      Is Probation Condition 18 (Condition 18) overly broad, ambiguous, unreasonable, or impermissibly vague?

3.      Did the trial court abuse its discretion in ordering Gaunt to pay restitution?

4.      Did the trial court abuse its discretion in ordering Gaunt to pay a supplemental public defender fee?

We affirm in part, reverse in part, and remand with instructions.

The facts of the underlying occurrence, as admitted by Gaunt, are that on October 17, 2011, Chase Starr asked Gaunt to drive him to a motel located adjacent to a restaurant. Gaunt agreed. Once there, Gaunt assisted Starr, Brandon Hall, and Samantha Cole in loading items stolen from the nearby restaurant into the back of a red Durango parked behind a business near the motel. The items taken included a safe that contained over $7000.

As a result of his participation, the State charged Gaunt with class C felony aiding, inducing, or causing burglary. Gaunt entered into a guilty plea that left his sentence to the trial court's discretion and provided that the State would not make a specific sentencing recommendation. As a condition of his plea, Gaunt agreed to provide a statement to police prior to sentencing that implicated his co-defendants in the burglary. He also agreed to testify against all three at trial. The issue of restitution, "including whether to order it and the

2

amount of restitution," was also left to the trial court's discretion. *Appellant's Appendix* at 50.

At sentencing, the trial court identified as aggravating circumstances Gaunt's history of juvenile delinquent and criminal behavior and his recent violation of "the conditions of his probation, parole, or community corrections placement or any pretrial release that were granted to him[.]" *Transcript* at 53. The trial court identified as mitigators the facts that Gaunt pleaded guilty and that he cooperated with police. The trial court also noted at the time of sentencing that Gaunt was serving a sentence in Allen County. Finally, the court noted that Gaunt's sentence was not suspendable. The trial court imposed a six-year sentence, with two years suspended to probation. The trial court also determined that Gaunt may serve two years of the four executed years on home detention through community corrections, if he qualified and if he could pay the costs associated with the program. As conditions of probation, the court ordered Gaunt to pay restitution in the amount of $10,868.82, payable jointly and severally with his co-defendants, and ordered him to pay a supplemental public defender fee of $300. The court also imposed Condition 18, which stated that Gaunt "shall not associate with any person having a questionable reputation or criminal record." *Appellant's Appendix* at 15.

1.

Gaunt contends his sentence is inappropriate in light of the nature of the offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the

Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d at 1223. Gaunt bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

We agree with Gaunt's assertion that, considered by itself, the nature of his offense does not support a sentence in excess of the advisory sentence. We do not agree, however, with his claim that there are no grounds for enhancing his sentence based upon a consideration of his character. He cites several unfortunate facets of his childhood as mitigators. Although lamentable, those circumstances cannot be viewed as having played a causal role in his later brushes with the juvenile and criminal justice systems and thus are of negligible mitigating weight. By the time he was only nineteen years old, Gaunt had already received seven juvenile-delinquency adjudications. These included adjudications for residential entry, multiple acts of receiving stolen property, escape, resisting law enforcement, and possession of paraphernalia. As an adult, Gaunt was recently convicted of felony corrupt business influence, as a class C felony. He was arrested on that charge a mere six months after his release from incarceration from the Indiana Department of Correction. He committed the present offense less than seven months after he was released from

4

incarceration for violating the dispositional order on his adjudication for residential entry.

In view of his history of juvenile delinquent and criminal behavior, which is not insubstantial when considered in relation to his relative youth, the sentence imposed by the trial court is not inappropriate.

2.

As a condition of probation, the trial court ordered that Gaunt "shall not associate with any person of questionable reputation or criminal record", i.e., Condition 18. *Appellant's Appendix* at 15. Essentially, Gaunt challenges the portion of Condition 18 that forbids his association with "persons of questionable reputation" on the ground that this aspect of Condition 18 is overly broad, ambiguous, unreasonable, or impermissibly vague.

The trial court is vested with the discretion to determine the conditions of probation. *Heaton v. State*, 984 N.E.2d 614 (Ind. 2013). We review for abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances or when the trial court misinterprets the law. *Id*.

We agree with the State's assertion that the two prohibited associations, i.e., with persons having a questionable reputation and with persons having a criminal record, are set out in the same sentence and therefore the former must be interpreted with the latter in mind. Thus, the phrase "persons of questionable character" should not be understood as subject to the vagaries of individualized notions of what constitutes character that is beyond reproach, and that which is not. Rather, read in context, we think it clear that by "persons of questionable character," the court was referring to persons who are known to engage in

5

criminal activity. Understood as such, the condition is not impermissibly vague.

3.

Gaunt contends the trial court abused its discretion by ordering him to pay restitution. Gaunt contends that the restitution order is defective because: (1) the record does not support a finding that the restaurant owner suffered $10,868.82 in actual losses; (2) the trial court failed to inquire about Gaunt's ability to pay; and 3) the trial court did not fix the manner of payment.

An order of restitution is a matter committed to the trial court's discretion. *Sickels v. State*, 982 N.E.2d 1010 (Ind. 2013). We will reverse the trial court's ruling only upon a showing of abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*.

We begin with Gaunt's claim that the record does not support a finding that the victim of his crime suffered $10,868.82 – the amount of restitution he was ordered to pay – in actual losses. A restitution order must be supported by sufficient evidence of actual loss sustained by the victim or victims of a crime. *See Lohmiller v. State,* 884 N.E.2d 903 (Ind. Ct. App. 2008). "The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence." *Bennett v. State,* 862 N.E.2d 1281, 1286 (Ind. Ct. App. 2007).

The victim of this offense, Ugaldes Family Restaurant, LLC (the Restaurant), was owned by Fernando Ugalde. The Restaurant was insured by State Farm Auto Insurance Companies. Ugalde filed a restitution claim form with the court and the probation department. The form included a contents inventory generated by State Farm Auto Insurance

Companies in relation to this incident. The inventory listed the following missing items and their respective values: Two Samsung cash registers, valued at $549 apiece; a safe, $2500; and $7100 in cash. Ugalde also submitted an invoice for $728.40 for what appears to be repair of damages to the building that resulted from the forced entry into the restaurant. It is not clear to us how those individual amounts totaled $10,868.82 – the amount indicated on Ugalde's restitution claim form. What *is* clear to us, however, is that a substantial amount of the Restaurant's loss was covered by insurance. The form reflects that all but a $500 deductible was covered by insurance. Indeed, it appears that the restitution claim form was completed incorrectly in that the "TOTAL RESTITUTION REQUESTED" was not reduced by the amount of loss covered by insurance.[1] *Appellant's Appendix* at 43. Even if we were to ignore the discrepancy between the amount of the restitution order and sum of the inventory sheet and repair invoice, the trial court abused its discretion in ordering Gaunt to pay the Restaurant for losses that were covered by insurance.

In *Little v. State,* 839 N.E.2d 807 (Ind. Ct. App. 2005), we concluded that an order of restitution provided for duplicate recovery when it ordered the defendant to pay restitution to the victim for expenses that had been covered by insurance. We further concluded that this

---

[1] The line immediately above the line reflecting the total amount requested appears as follows:

INSURANCE COVERAGE (Deduct total amount paid by insurance)   SUBTRACT:  $_____

*Appellant's Appendix* at 43. Although the preparer of the form correctly entered $10,368.82 on this line, that amount was not subtracted from the total amount of loss, but instead *added* to the $500 deductible recorded several lines above on the appropriate line. Thus, the "total restitution requested" on the next line down incorrectly reflected the sum of the deductible plus the covered amount ($10,368.82 + $500 = $10,868.82), rather than the total loss, plus the deductible, minus the amount covered by insurance (10,368.82 + $500 - $10,368.82 = $500).

7

constituted an abuse of discretion. *Id.* The remedy in *Little* was a remand to the trial court with instructions to amend the restitution order such that there was no duplicate recovery. The same remedy is appropriate in the present case.

We acknowledge the possibility that State Farm might have subrogation rights in the event the Restaurant recovers some or all of its losses from the perpetrators of this incident. This situation has also been discussed before. In *Little*, we directed the trial court upon remand to enter an order that did not provide double recovery to the victim. In doing so, we made the following observation: "Two means by which the court could accomplish this task are ordering the amounts paid directly to the insurance companies or reducing the payment to [the victim] to include only those amounts he owes the insurance companies under the subrogation liens." *Id*. at 810 n.2.

We note the State's contention that because Gaunt acquiesced in the amount of restitution to be paid, he may not now challenge the restitution order on this basis. Although the record does reflect that Gaunt acknowledged the obligation to pay restitution, it is not clear that he specifically acknowledged an obligation to pay a specific amount, including the amount the trial court ultimately ordered him to pay to Ugalde. Rather, we understand his acknowledgement of an obligation to pay restitution as confirming that the affected parties must be reimbursed commensurate with the amount of their loss. We do not wish to be understood to hold that Gaunt is not liable for reimbursing the appropriate parties the entire amount of the loss caused by his criminal acts. Instead, we clarify that reimbursement must be made to the parties that actually suffered a loss and must be in the amount of the actual

loss suffered by that party. This will be the trial court's task upon remand.

We turn now to Gaunt's claim that the order of restitution is not sustainable because the trial court did not inquire about Gaunt's ability to pay. Ind. Code Ann. § 35-38-2-2.3 (West, Westlaw current with all 2012 legislation) provides, "[w]hen restitution... is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." Pursuant to this provision, a trial court is required to inquire about the defendant's ability to pay whenever it orders restitution as a condition of probation or a suspended sentence. *Kays v. State*, 963 N.E.2d 507 (Ind. 2012). "The statute sets forth no particular procedure the trial court must follow in determining the defendant's ability to pay[.]" *Id*. at 509.

In the present case, the trial court asked Gaunt, "what do you think your employment opportunities are?" *Transcript* at 53. Gaunt responded that he had a job secured at an auto parts store upon his release from incarceration and that it paid minimum wage. He also informed the court that he might have a paper route as well. Gaunt also informed the court he was enrolled in college, which in context implied that such would increase his future earning potential. The presentence investigation report also indicated that Gaunt was in good health. This information, in the aggregate, was adequate to permit the trial court to make an informed decision with respect to the amount of restitution to be paid and the manner in which it would be paid. *See Mitchell v. State,* 559 N.E.2d 313 (Ind. Ct. App. 1990) (a review of the defendant's presentence report, which contained information concerning defendant's financial status and employment history, and also indicated that the defendant was in good

9

health, was adequate inquiry into the defendant's ability to pay), *trans. denied.*

Lastly, Gaunt contends the restitution order was erroneous because it did not fix the manner of payment as required by I.C. § 35-38-2-2.3. The State contends that the trial court's order comported with the statutory requirement because "the trial court set both the amount of amount of restitution, $10,868.82, and the manner in which it was to be paid, jointly and severally with the other co-defendants[.]" *Appellee's Brief* at 13. In the present case, this is not enough. Depending upon facts that presumably will be developed upon remand, Gaunt will owe between $500 and $10,368.82 in restitution. Depending upon his means at the time, it may be too much to ask that he pay even the lowest possible amount in a single, lump-sum payment. Yet, the current order would permit such. Upon remand, the trial court is directed to establish a payment plan or payment schedule that is fashioned with Gaunt's financial circumstances in mind. *See Savage v. State*, 650 N.E.2d 1156, 1164 (Ind. Ct. App. 1995) (Sullivan, J., dissenting) *aff'd in part, vacated in part, dissenting opinion adopted,* 655 N.E.2d 1223 (Ind. 1995) (the trial court did not comply with the mandate to fix the manner of payment by merely stating the total amount of restitution owed and directing that it be mailed via the United States Mail; instead, the trial court was required to establish an appropriate payment plan or payment schedule tailored to the defendant's financial circumstances).

4.

Gaunt contends the trial court abused its discretion by ordering him to pay a $300 supplemental public defender fee. Specifically, Gaunt contends this was improper because

the court did not first determine his ability to pay. Like other sentencing decisions, the decision whether to impose restitution, fines, costs, or fees is generally committed to the trial court's discretion. *Berry v. State,* 950 N.E.2d 798 (Ind. Ct. App. 2011). A trial court does not abuse its discretion if the fees imposed fall within the parameters provided by statute. *Id.*

Three statutory provisions address the imposition of public defender fees. Ind. Code Ann. § 33-40-3-6 (West, Westlaw current with all 2012 legislation) authorizes the trial court to impose reasonable attorney fees against the defendant at any phase of the proceedings if it finds that the defendant has the ability to pay such fees. Ind. Code Ann. § 33-37-2-3 (West, Westlaw current with all 2012 legislation) authorizes the trial court to impose part of the attorney fees upon the defendant, provided the court determines the defendant is not indigent. Ind. Code Ann. § 35-33-7-6 (West, Westlaw current with all 2012 legislation) authorizes the trial court to impose public defender fees before completion of the initial hearing, so long as it determines the defendant is not indigent. The trial court may order reimbursement under any of these statutes, or a combination thereof. *May v. State,* 810 N.E.2d 741 (Ind. Ct. App. 2004).

The trial court did not specify which statute was the source of the order to pay public defender fees. The parties agree that the trial court's order was not sustainable under either I.C. § 35-40-3-6 or I.C. § 35-37-7-6. We presume the trial court also knew this. *See H.M. v. State*, 892 N.E.2d 679 (Ind. Ct. App. 2008) (a trial court is presumed to know the law and apply it correctly), *trans. denied.* This leaves I.C. § 33-37-2-3, which provides, in pertinent part, as follows:

11

(a) Except as provided in subsection (b), when the court imposes costs, it shall conduct a hearing to determine whether the convicted person is indigent. If the person is not indigent, the court shall order the person to pay:

> (1) the entire amount of the costs at the time sentence is pronounced;

> (2) the entire amount of the costs at some later date; or

> (3) specified parts of the costs at designated intervals.

(b) *A court may impose costs and suspend payment of all or part of the costs until the convicted person has completed all or part of the sentence. If the court suspends payment of the costs, the court shall conduct a hearing at the time the costs are due to determine whether the convicted person is indigent.* If the convicted person is not indigent, the court shall order the convicted person to pay the costs:

> (1) at the time the costs are due; or

> (2) in a manner set forth in subsection (a)(2) through (a)(3).

\* \* \* \* \*

(e) If, after a hearing under subsection (a) or (b), the court determines that a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person. The clerk shall deposit the amount paid by a convicted person under this subsection in the county's supplemental public defender services fund established under IC 33-40-3-1.

(Emphasis supplied.) This provision applies only to defendants the trial court has not found to be indigent. *See Banks v. State*, 847 N.E.2d 1050 (Ind. Ct. App. 2006), *trans. denied*.

Although early in these proceedings the trial court found Gaunt to be indigent "at this time" (i.e., at the time of the initial hearing), *Transcript* at 8, the court stated it would "revisit this issue at a later date, to determine whether or not [Gaunt] should reimburse the County for all or part of the cost of the Court appointed attorney." *Id.* at 8-9. Reading subsections (a)

and (b) of I.C. § 33-37-2-3 in conjunction with each other, it is apparent that the statute contemplates a situation in which indigency and the ability to pay may be determined at a later date – specifically when the defendant has completed all or part of his or her executed sentence. *See* I.C. § 33-37-2-3(b). By its own terms, I.C. § 33-37-2-3 does not require an indigency determination for such orders until after the term has been completed – in other words, an indigency determination is required in these circumstances at or near the time the defendant will be expected to begin repayment. *See Berry v. State*, 950 N.E.2d at 801 ("*Rich* [*v. State*, 890 N.E.2d 44 (Ind. Ct. App. 2008)] and *Kimbrough* [*v. State*, 911 N.E.2d 621 (Ind. Ct. App. 2009)] mean that if the trial court suspends payment of costs [under I.C. § 33-37-2-3] until the executed portion of the sentence has been served, then it must hold an indigency hearing at the time the costs are due"). The trial court did not abuse its discretion in ordering Gaunt to pay $300 in public defender fees without first holding a hearing concerning his ability to pay.

Judgment affirmed in part, reversed in part, and remanded with instructions.

ROBB, C.J., and CRONE, J., concur.