## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/22/2017, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender –
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brionna McCloud,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 22, 2017

Court of Appeals Case No.
49A05-1606-CR-1194

Appeal from the Marion Superior Court

The Honorable Barbara L. Cook Crawford, Judge

Trial Court Cause Nos.
49G09-1512-F6-43342, 49G09-1509-F6-31290, 49G09-1510-F6-35534

**Bradford, Judge.**

# Case Summary

[1] In January of 2016, Appellant-Defendant Brionna McCloud pled guilty to Class A misdemeanor battery and Class B misdemeanor leaving the scene of an accident. In pleading guilty, McCloud admitted that she left the scene after the vehicle which she was driving was involved in a collision with an unattended vehicle. As part of her plea agreement, McCloud agreed to pay restitution to Sara[1] Wilson, the owner of the other vehicle involved in the accident. McCloud was thereafter placed on probation and ordered to pay $3772.47 in restitution. She was also ordered to pay certain costs, fees, and fines.

[2] On appeal, McCloud contends that the trial court abused its discretion in (1) ordering her to pay restitution to Wilson, (2) imposing certain fees, and (3) failing to provide her with adequate notice of the terms of her probation. Concluding that the trial court did not abuse its discretion in ordering McCloud to pay restitution or in imposing the challenged fees, we affirm. However, we remand the matter to the trial court with the instruction that the court provide McCloud with a written copy of the terms of her probation if it has not yet done so.

# Facts and Procedural History

---

[1] Ms. Wilson's name is spelled both "Sara" and "Sarah" in the record. For purposes of this memorandum decision, we will spell Ms. Wilson's name "Sara." We apologize to Ms. Wilson if this is an incorrect spelling.

[3] At some point in or around September of 2015, Appellee-Plaintiff the State of Indiana ("the State") charged McCloud under cause number 49G09-1509-F6-31290 ("Cause No. F6-31290") with Level 6 felony resisting law enforcement.[2] At some point in or around October of 2015, the State charged McCloud under cause number 49G09-1510-F6-35534 ("Cause No. F6-35534") with Level 6 felony theft.[3]

[4] On September 23, 2015, McCloud was driving a vehicle in a Kroger parking lot when she struck an unattended vehicle owned by Wilson. McCloud did not stop at the scene of the accident after striking Wilson's vehicle. Instead, McCloud drove to the other side of the parking lot, parked, and went into the store to steal liquor. In relation to these acts, on December 8, 2015, the State charged McCloud under cause number 49G09-1512-F6-43342 ("Cause No. F6-43342") with two counts of Level 6 felony theft, one count of Class A misdemeanor Battery, and one count of Class B misdemeanor leaving the scene of an accident.

[5] On January 11, 2016, McCloud entered into a plea agreement, under the terms of which she agreed to plead guilty to the following charges: (1) under Cause No. F6-31290 – Level 6 felony resisting law enforcement under, (2) under

---

[2] This count alleged that on September 2, 2015, McCloud knowingly fled from Indianapolis Metropolitan Police Officer John Hartcher, after Officer Hartcher identified himself and ordered McCloud to stop.

[3] This count alleged that on August 18, 2015, McCloud knowingly or intentionally exerted unauthorized control over property which belonged to Kroger, *i.e.*, meat and bottles of alcohol.

Cause No. F6-35534 – Level 6 felony theft, and (3) under Cause No. F6-43342 – Class A misdemeanor battery and Class B misdemeanor leaving the scene of an accident. According to the terms of McCloud's plea, McCloud agreed to pay restitution to Wilson and the State agreed to dismiss the remaining charges under Cause No. F6-43342. The trial court accepted McCloud's guilty plea and sentenced her pursuant to the term of the plea agreement as follows: (1) with respect to Cause No. F6-35534 – 365 days of incarceration in the Marion County Jail, (2) with respect to Cause No. F6-31290 – 365 days in the Marion County Community Corrections, and (3) with respect to Cause No. F6-43342 – 365 days of supervised probation.[4] The trial court also ordered McCloud to pay restitution to Wilson in an amount to be determined at a later date.

[6] On February 1, 2016, the trial court conducted a restitution hearing. The trial court took the matter under advisement and later ordered McCloud to pay $3772.47 in restitution to Wilson. The trial court also ordered McCloud to pay a $100.00 public defender fee and $340.00 in probation fees. This appeal follows.

# Discussion and Decision

---

[4] Pursuant to the terms of her plea agreement, the 365 days in community corrections was to run consecutive to the term that was to be executed in the Marion County Jail and the 365 days on supervised probation was to run consecutive to the term that was to be served in community corrections. McCloud does not challenge her sentences relating to Cause Nos. F6-31290 or 35534 in the instant appeal.

McCloud challenges both the restitution order and the imposition of certain fees on appeal. We will discuss each in turn.

# I. Restitution

McCloud contends that the trial court abused its discretion in ordering her to pay $3772.47 in restitution to Wilson. Specifically, McCloud argues that (A) restitution was inappropriate because there was no evidence that the damage to Wilson's vehicle occurred as a direct and immediate result of her criminal act, (B) the trial court abused its discretion by failing to consider her ability to pay the ordered restitution, and (C) the amount of restitution ordered by the trial court was excessive. We disagree.

The Indiana Supreme Court has held that "[t]he principal purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused." *Pearson v. State*, 883 N.E.2d 770, 772 (Ind. 2008) (citing *Haltom v. State*, 832 N.E.2d 969, 971 (Ind. 2005)). "Restitution also serves to compensate the offender's victim." *Id*. (citing *Haltom*, 832 N.E.2d at 971). In this vein, the Indiana General Assembly has established that "a trial court may order restitution to a victim of a crime." *Blixt v. State*, 872 N.E.2d 149, 153 (Ind. Ct. App. 2007) (citing Ind. Code § 35-50-5-3). "A restitution order will be reviewed for an abuse of discretion." *Id*. (citing *Crawford v. State*, 770 N.E.2d 775, 781 (Ind. 2002)). "An abuse of discretion has occurred only if no evidence or reasonable inferences therefrom support the trial court's decision." *Little v. State*, 839 N.E.2d 807, 809 (Ind. Ct. App. 2005).

# A. Appropriateness of Award of Restitution

[10] McCloud argues that the trial court abused its discretion in ordering restitution because there is no evidence that the damage to Wilson's vehicle occurred as a direct and immediate result of her criminal act. In support, McCloud relies on *M.C. v. State*, 817 N.E.2d 606 (Ind. Ct. App. 2004). In *M.C.*, the appellant was adjudicated to be delinquent for committing what would have been Class A misdemeanor leaving the scene of the accident causing serious bodily injury and Class B misdemeanor leaving the scene of the accident causing property damage, if committed by an adult. 817 N.E.2d at 608. The trial court ordered M.C. to pay restitution to the other individuals involved in the accident. *Id.* On appeal, a panel of this court reversed the trial court's restitution order, concluding that the State had failed to establish M.C.'s fault or liability for the accident. *Id.* at 610. Because we believe that *M.C.* can easily be distinguished from the facts of the instant matter, we find McCloud's reliance on *M.C.* to be unpersuasive.

[11] In the instant matter, the factual basis to support McCloud's guilty plea provides that

> on or about September 23, 2015, Marion County, State of Indiana, Brionna McCloud being the driver of a vehicle that was involved in an accident, involved in a collision with an unattended vehicle being the property of Sara Wilson, did knowingly or intentionally fail to stop the vehicle at the scene of said accident or as close as possible there to[.]

Tr. pp. 20-21. Given that McCloud admitted that the vehicle she was driving collided with an unattended vehicle, one may reasonably infer that McCloud admitted to being at fault for the collision. This important fact distinguishes the instant matter from *M.C.*

[12] As for who constitutes the victims of the crime of leaving the scene of an accident, we have previously held that

> [w]hen the crime is leaving the scene of an accident, clearly one victim of that crime is the person who suffered personal injury or property damage as a result of the accident. *See Lowe v. State*, (1982) Ind. App., 433 N.E.2d 798 (to commit offense there must be involvement in motor vehicle accident which causes property damage to another). It is equally apparent that any persons who sustained property damage as a result of the driver's flight are victims of his crime of leaving the scene of an accident; those individuals would not have been injured had the driver stopped at the site of the initial accident.

*Kingston v. State*, 479 N.E.2d 1356, 1359 (Ind. Ct. App. 1985).

[13] Also, in *J.P.B. v. State*, 705 N.E.2d 1075 (Ind. Ct. App. 1999), we considered whether restitution was appropriate after an individual was convicted of leaving the scene of an accident. In pleading guilty to the charged offense, J.P.B. admitted that he had struck the victim's vehicle. *J.P.B.*, 705 N.E.2d at 1077. At sentencing, J.P.B. was ordered to pay restitution to the owner of the vehicle damaged in the accident. *Id.* On appeal, we concluded that the owner of the vehicle constituted a victim of J.P.B.'s criminal act and that the loss suffered by the victim was a "direct and immediate result of" J.P.B.'s criminal act. *Id.*

[14]  As was mentioned above, here, one may reasonably infer from McCloud's guilty plea that McCloud assumed fault for the accident and that she was driving the vehicle that struck Wilson's vehicle. McCloud's plea agreement explicitly states that McCloud "*shall* pay restitution to Sarah Wilson in the amount of TBD." Appellant's App. Vol. II, p. 41 (emphasis added). This statement coupled with the parties' statements during McCloud's guilty plea hearing makes it clear that McCloud understood that she would be required to pay restitution as part of her sentencing following her guilty plea.[5]

[15]  With regards to plea agreements, the Indiana Supreme Court recently reiterated the following:

> The terms of a plea agreement between the State and the defendant are contractual in nature. *Lee v. State*, 816 N.E.2d 35, 38 (Ind. 2004). When a trial court accepts a plea agreement, it is bound by its terms. *Berry v. State*, 10 N.E.3d 1243, 1246 (Ind. 2014). As such, we are guided by contract interpretation principles, beginning with the agreement's plain language and determining the intent of the parties at the time the plea was entered. *Id*. at 1247 (citing *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) ("The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement.")). To the extent issues of

---

[5]  In trying to challenge the imposition of restitution during the restitution hearing, McCloud's counsel acknowledged that restitution was included as a condition to McCloud's guilty plea but claimed that given McCloud's position that the damages to Wilson's vehicle were not caused by McCloud's act of leaving the scene of the accident, it was counsel's belief that the parties were agreeing that the trial court would be in the position to determine whether restitution would be owed. After considering the arguments presented by McCloud's counsel, the trial court indicated that it did not agree with counsel's interpretation of the relevant case law and ordered McCloud to pay $3772.47 in restitution to Wilson.

statutory interpretation are relevant, our standard of review is *de novo*. *Day v. State*, 57 N.E.3d 809, 811 (Ind. 2016).

*State v. Smith*, 71 N.E.3d 368, 370 (Ind. 2017) (italics in original).

In accepting the plea agreement, McCloud agreed to the terms contained there, including that she pay restitution to Wilson. The trial court was bound by the terms contained in the parties' plea agreement. McCloud's argument that the trial court abused its discretion by imposing an order of restitution is therefore without merit.

## B. Ability to Pay

McCloud also argues that the trial court abused its discretion by failing to consider her ability to pay—or claimed lack thereof—when ordering her to pay $3772.47 in restitution. The Indiana Supreme Court recently reiterated that

> when setting restitution as a condition of probation, our trial courts are required to consider the defendant's ability to pay. Our own precedent has clearly established "when the trial court enters an order of restitution as part of a condition of probation, the court is required to inquire into the defendant's ability to pay. This is so in order to prevent indigent defendants from being imprisoned because of a probation violation based on a defendant's failure to pay restitution." [*Pearson*, 883 N.E.2d at 772]. When restitution is ordered as part of an executed sentence, no inquiry into the ability to pay is required because restitution is merely a money judgment, and a defendant cannot be imprisoned for non-payment. *Id*. at 773.

*Bell v. State*, 59 N.E.3d 959, 963 (Ind. 2016). Stated differently, "a trial court may order restitution as part of a defendant's sentence wholly apart from probation." *Pearson*, 883 N.E.2d at 772-73.

[18] The parties disagree as to whether restitution was ordered as part of McCloud's sentence or as a condition of her probation, and the record contains indications that both are true. However, we conclude that the trial court properly ordered restitution regardless of whether said restitution was ordered as a part of McCloud's sentence or as a condition of her probation.

[19] Before determining the amount of restitution that McCloud was to pay to Wilson, the trial court engaged McCloud in the following line of questioning:

> [Trial Court]:      …  Do you intend to work when you are released Ms. McCloud?
> [The Defendant]:  Can you say that again, Your Honor?
> [Trial Court]:      Do you intend to work?
> [The Defendant]:  Yes, Your Honor.
> [Trial Court]:      When was the last time you worked, ma'am?
> [The Defendant]:  Actually, I was fifteen.
> [Trial Court]:      Ok, and how old are you now?
> [The Defendant]:  I'm nineteen, Your Honor.
> [Trial Court]:      Ok. Do you have any children, ma'am?
> [The Defendant]:  No, Your Honor.

Tr. p. 24. The trial court also included the requirement that McCloud "be employed full time [or] be actively seeking full-time employment" as a condition of McCloud's probation. Appellant's App. Vol. II, p. 42. The inclusion of this requirement coupled with the above-quoted colloquy

demonstrates that the trial court considered McCloud's ability to pay before ordering her to pay restitution to Wilson. The trial court, therefore, satisfied the requirements of *Bell*, and, accordingly, did not abuse its discretion in this regard.

## C. Amount of Restitution

[20] McCloud also challenges the amount of restitution ordered by the trial court, arguing that it is excessive. We disagree.

[21] During the restitution hearing, the State presented evidence indicating that McCloud's actions caused $3772.47 in damage to Wilson's vehicle. McCloud's counsel stipulated "that those are the expenses associated with the damage that was done to the vehicle." Tr. p. 27. Of this amount, the State requested that $500.00 be paid directly to Wilson and the remaining $3272.47 be paid to Wilson's insurance company.[6] The trial court ordered that McCloud pay only the amount necessary to cover the cost of the repairs to Wilson's vehicle. Accordingly, the trial court did not award an excessive amount of restitution.[7]

---

[6] The $500.00 represented Wilson's deductible, which was paid by Wilson, and the remaining represented the amount paid by Wilson's insurance company.

[7] Although the trial court's restitution order did not explicitly include the breakdown of funds requested by the State, the funds awarded by the trial court clearly represent the cost of the repairs to Wilson's vehicle. Thus, to the extent that McCloud argues that the amount of restitution ordered was excessive merely because Wilson only paid $500.00 toward the repairs of the vehicle and the rest was paid by Wilson's insurance company, we disagree. One may reasonably assume that Wilson's insurance company will be able to recover the funds that it paid in order to fix Wilson's vehicle from Wilson if it so chooses. Furthermore, it seems appropriate to note that the parties expected a portion of the funds to be paid to Wilson's insurance company as McCloud's counsel specifically stated during the restitution hearing that McCloud did not contest that restitution funds could be paid to a third party, *i.e.*, Wilson's insurance company.

# II. Assessment of Certain Fees

[22] McCloud also contends that the trial court abused its discretion in ordering her to pay certain fees, namely a $100.00 public defender fee and $340.00 in probation fees. "We review the trial court's imposition of costs or fees for an abuse of discretion." *Jackson v. State*, 968 N.E.2d 328, 333 (Ind. Ct. App. 2012) (citing *Kimbrough v. State*, 911 N.E.2d 621, 636 (Ind. Ct. App. 2009)). If the trial court imposes fees within statutory limits, there is no abuse of discretion. *Id*. (citing *Kimbrough*, 911 N.E.2d at 636).

## A. Public Defender Fee

[23] "There are three statutes that address when a defendant must reimburse the county for counsel provided to him at public expense—all three of which require the funds to be deposited in the county's supplemental public defender services fund." *May v. State*, 810 N.E.2d 741, 745 (Ind. Ct. App. 2004). "A trial court can order reimbursement for costs of representation under any of the three statutes or combination thereof." *Id*.

[24] The first statute, Indiana Code section 35-33-7-6, provides, in relevant part, as follows:

> (a) Prior to the completion of the initial hearing, the judicial officer shall determine whether a person who requests assigned counsel is indigent. If the person is found to be indigent, the judicial officer shall assign counsel to the person.
> ****

(c) If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:

      (1) For a felony action, a fee of one hundred dollars ($100).

      (2) For a misdemeanor action, a fee of fifty dollars ($50).

The clerk of the court shall deposit fees collected under this subsection in the county's supplemental public defender services fund established under IC 33-40-3-1.

(d) The court may review the finding of indigency at any time during the proceedings.

The next statute, Indiana Code section 33-40-3-6, provides, again in relevant part, as follows:

(a) If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation under section 7 of this chapter,[8] the court shall require payment by the person or the person's parent, if the person is a child alleged to be a delinquent child, of the following costs in addition to other costs assessed against the person:

      (1) Reasonable attorney's fees if an attorney has been appointed for the person by the court.

      (2) Costs incurred by the county as a result of court appointed legal services rendered to the person.

              ****

(d) The sum of:

---

[8] Indiana Code section 33-40-3-7(a) provides that if a defendant is receiving publicly paid representation, "the court shall consider: (1) the person's independently held assets and assets available to the spouse of the person or the person's parent if the person is unemancipated; (2) the person's income; (3) the person's liabilities; (4) the extent of the burden that payment of costs assessed under section 6 of this chapter would impose on the person and the dependents of the person." "If, after considering the factors described in subsection (a), the court determines that the person is able to pay the costs of representation, the court shall enter a finding that the person is able to pay those additional costs." Ind. Code § 33-40-3-7(b).

> (1) the fee collected under IC 35-33-7-6;
> (2) any amount assessed by the court under this
> section; and
> (3) any amount ordered to be paid under IC 33-37-2-
> 3;
> may not exceed the cost of defense services rendered to the
> person.

The final statute, Indiana Code section 33-37-2-3, provides, in relevant part, as

follows:

> (a) Except as provided in subsection (b), when the court imposes
> costs, it shall conduct a hearing to determine whether the
> convicted person is indigent. If the person is not indigent, the
> court shall order the person to pay:
>> (1) the entire amount of the costs at the time sentence
>> is pronounced;
>> (2) the entire amount of the costs at some later date;
>> or
>> (3) specified parts of the costs at designated intervals.
> (b) A court may impose costs and suspend payment of all or part
> of the costs until the convicted person has completed all or part
> of the sentence. If the court suspends payment of the costs, the
> court shall conduct a hearing at the time the costs are due to
> determine whether the convicted person is indigent. If the
> convicted person is not indigent, the court shall order the
> convicted person to pay the costs:
>> (1) at the time the costs are due; or
>> (2) in a manner set forth in subsection (a)(2) through
>> (a)(3).
> (c) If a court suspends payment of costs under subsection (b), the
> court retains jurisdiction over the convicted person until the
> convicted person has paid the entire amount of the costs.
> ****
> (e) If, after a hearing under subsection (a) or (b), the court
> determines that a convicted person is able to pay part of the costs

of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person. The clerk shall deposit the amount paid by a convicted person under this subsection in the county's supplemental public defender services fund established under IC 33-40-3-1.

[25] Although the trial court did not specify under which of the above-quoted statutes it imposed the $100.00 public defender fee, we conclude that Indiana Code section 33-40-3-6 authorized the trial court to impose the fee at any time during the proceedings under so long as the trial court first considered McCloud's ability to pay the fee. As is quoted above, before imposing any fines, fees, or restitution, the trial court engaged McCloud in the following line of questioning:

> [Trial Court]: … Do you intend to work when you are released Ms. McCloud?
> [The Defendant]: Can you say that again, Your Honor?
> [Trial Court]: Do you intend to work?
> [The Defendant]: Yes, Your Honor.
> [Trial Court]: When was the last time you worked, ma'am?
> [The Defendant]: Actually, I was fifteen.
> [Trial Court]: Ok, and how old are you now?
> [The Defendant]: I'm nineteen, Your Honor.
> [Trial Court]: Ok. Do you have any children, ma'am?
> [The Defendant]: No, Your Honor.

Tr. p. 24. The above-quoted colloquy demonstrates that the trial court considered McCloud's ability to pay before imposing the $100.00 public defender fee. The trial court's questions mirrored the factors for considerations set forth in Indiana Code section 33-40-3-7. Given McCloud's stated plan to

obtain employment once released to community corrections, the trial court's determination that McCloud could afford to pay a $100.00 public defender fee was reasonable. The trial court, therefore, did not abuse its discretion in imposing this fee.

## B. Probation Fees

[26] Indiana Code section 35-38-2-1(e) provides, in relevant part, as follows:

> In addition to any other conditions of probation, the court may order each person convicted of a misdemeanor to pay:
> > (1) not more than a fifty dollar ($50) initial probation user's fee;
> > (2) a monthly probation user's fee of not less than ten dollars ($10) nor more than twenty dollars ($20) for each month that the person remains on probation;
> > ****
> > (4) an administrative fee of fifty dollars ($50);
> to either the probation department or the clerk.

In the instant matter, McCloud was ordered to pay an initial probation user fee, a $20.00 monthly user fee, and the $50.00 administrative fee, for a total of $340.00 in probation fees.

[27] In challenging the imposition of the $340.00 in probation fees, McCloud incorrectly asserts that the fees were imposed by the probation department, rather than the trial court. Review of the record demonstrates otherwise. McCloud's probation order, which was signed and issued by the trial court, set forth the probation fees which would apply to McCloud. As such, we conclude that the trial court, and not the probation department, imposed the fees in

question. We further conclude that McCloud has failed to establish that the trial court abused its discretion in doing so.

# III. Notice of Conditions of Probation

[28] McCloud last contends that the trial court abused its discretion by failing to provide her with written notice of the terms of her probation. Indiana Code section 35-38-2-2.3(b) provides that

> When a person is placed on probation, the person shall be given a written statement specifying:
>> (1) the conditions of probation; and
>> (2) that if the person violates a condition of probation during the probationary period, a petition to revoke probation may be filed before the earlier of the following:
>>> (A) One (1) year after the termination of probation.
>>> (B) Forty-five (45) days after the state receives notice of the violation.

"Thus, the law generally requires that if a person is placed on probation, the trial court must provide the defendant a written statement containing the terms and conditions of probation at the sentencing hearing." *Gil v. State*, 988 N.E.2d 1231, 1234 (Ind. Ct. App. 2013) (citing *Kerrigan v. State*, 540 N.E.2d 1251, 1252 (Ind. Ct. App. 1989)). "However, we have previously held that the trial court's failure to provide written probation terms may be harmless error if the defendant has been orally advised of the conditions and acknowledges that he understands the conditions." *Id.* (citing *Kerrigan*, 540 N.E.2d at 1252).

[29] Although the trial court entered written probation terms, it is unclear from the record whether such terms were provided to McCloud. During the guilty plea hearing, McCloud indicated that she understood that all of the standard terms of probation would apply. At sentencing, the trial court stated the following:

> During the time that you are on Probation for three hundred sixty-five days, you shall attend an eight hour anti-conversion class. You shall pay restitution to Sara Wilson in the amount to be determined and we'll set that out for a Restitution hearing at a later time. You shall stay away from all Kroger stores in Marion County[.]

Tr. pp. 23-24. The trial court also indicated that McCloud would be required to pay certain fees and fines. McCloud, however, did not orally indicate that she understood these terms. Because we are unable to determine whether McCloud was provided notice of all of the terms of her probation, we remand the matter to the trial court with the instruction that the trial court provide McCloud with a copy of the written terms of her probation, if the court has not already done so. *See Gil*, 988 N.E.2d at 1234 (concluding that the trial court's error in failing to enter written probation terms was not harmless and remanding the matter to the trial court with the instruction that the trial court enter written probation terms).

# Conclusion

[30] In sum, we conclude that the trial court did not abuse its discretion in ordering McCloud to pay $3772.47 in restitution to Wilson or in imposing certain fees.

However, to the extent that we are unable to determine whether McCloud was provided with a written copy of the terms of her probation, we remand the matter to the trial court with the instruction that the court provide McCloud with a copy of the written terms of her probation, if the court has not already done so.

[31] The judgment of the trial court is affirmed and remanded.

Baker, J., and Mathias, J., concur.